**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 15 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

PATRICK DEAN COANDO,

      Plaintiff - Appellant,

v.

COASTAL OIL & GAS
CORPORATION, Vernal, Utah
Branch Division; DAVE BAINE,
Representative; RONALD GOOD,
Vice President, Purchasing;
WILLIAM G. LAUGHLIN, Attorney,

      Defendants - Appellees.

No. 01-4080
(D.C. No. 99-CV-1016-B)
(D. Utah)

_____

PATRICK DEAN COANDO,

      Plaintiff - Appellant,

v.

TOM BROWN, INC.; CLIFF
DRESCHER, Vice-President,
Operations, Tom Brown, Inc.,

      Defendants - Appellees.

No. 01-8069
(D.C. No. 97-CV-1011-D)
(D. Wyoming)

_____

PATRICK DEAN COANDO,

      Plaintiff - Appellant,

v.

No. 01-8072
(D.C. No. 00-CV-1001-D)
(D. Wyoming)

TOM BROWN, INC.; JOHN
SHEPARD; CINDY TURNER;
BRUCE R. DeBOER,

Defendants - Appellees.

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **HOLLOWAY** , and **ANDERSON** , Circuit Judges.

---

After examining the briefs and appellate records, this panel has determined

unanimously that oral argument would not materially assist the determination of

these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are

therefore ordered submitted without oral argument.

Plaintiff-Appellant Patrick Dean Coando appeals adverse judgments by the

district court in each of the three above-captioned cases. In March 1997 Plaintiff

brought his first action in the United States District Court in Wyoming against

Defendants-Appellees Tom Brown, Inc. and Cliff Drescher (TBI) over a dispute

arising from TBI's rejection of Plaintiff's bid to supply TBI with casing and

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

-2-

tubing products for TBI's gas wells on the Wind River Reservation in Central Wyoming. In December 1999 Plaintiff filed suit against Coastal Oil and Gas and others (Coastal) in the United States District Court in Utah, based on Coastal's refusal to enter into an exclusive contract with Plaintiff to supply Coastal with oil well casing and tubing products for projects on the Uintah and Ouray Reservations in Utah. In January 2000 Plaintiff brought his second federal action against TBI and others in Wyoming, alleging TBI wrongfully rejected Plaintiff's demand that TBI make him its exclusive supplier of casing and tubing for projects on the Wind River Reservation. In each case, Plaintiff alleged multiple violations of federal law and his constitutional rights. In each case, the district court dismissed his complaints before trial under either Fed. R. Civ. P. 56 (summary judgment), or 12(b)(6) (failure to state a claim upon which relief can be granted). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we have consolidated each of Plaintiff's appeals and now dispose of them in this order and judgment.

## I. Standard of Review

"As the sufficiency of a complaint is a question of law, we review *de novo* the district court's grant of a motion to dismiss pursuant to 12(b)(6), applying the same standards as the district court." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (quotation and citation omitted). In reviewing the court's decision,

all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party. A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Id.* (quotation and citation omitted).

Likewise, we review the district court's grant of summary judgment de novo. *Amro v. Boeing Co.,* 232 F.3d 790, 796 (10th Cir. 2000). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence that would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-52 (1986). Accordingly, summary judgment is appropriate against any party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## II. No. 01-8069

Plaintiff, an enrolled member of the Eastern Shoshone Tribe, is the operator of Finally A Casing Service, Inc. (FACS), an oilfield casing and tubing distribution company that is a Shoshone Tribal Employment Rights Office (TERO) Certified Indian Contractor qualifying for "Indian Preference Business

Status" on the Wind River Reservation. TBI, an independent oil and gas producer, signed an agreement with the TERO agreeing to comply with Tribal Resolution 4967, which requires all employers operating on the Wind River Reservation to provide preferential hiring, promotion, and training of certified Indian contractors and employees.

In November 1996 Plaintiff sent a letter to TBI introducing himself and informing TBI of his desire to fulfill TBI's tubing and casing needs. TBI responded by inviting Plaintiff to bid on a project to provide over 13,000 feet of casing. Plaintiff initially objected to the requirement that he bid on the project, but ultimately bid $126,746. TBI rejected that bid as being unreasonably high, and accepted a bid by a non-American Indian contractor for $93,700.

Plaintiff sued, alleging (1) a violation of his equal protection rights, in contravention of the United States Constitution, an 1868 Treaty between the United States and the Eastern Shoshone Tribe (1868 Treaty), and Tribal Resolution 4967; (2) race discrimination; (3) a violation of his rights as a shareholder in property rights on the Wind River Reservation; (4) a violation of federal laws mandating Indian hiring preferences; (5) defamation of character; (6) deprivation of life, liberty and the pursuit of happiness; and (7) breach of the TERO agreement. The district court entered summary judgment for TBI on all claims except one, concluding that a material issue of fact remained as to whether TBI breached the TERO agreement's preference policies by rejecting Plaintiff's

bid on the basis of price before giving him an opportunity to negotiate the price and reduce his bid to a reasonable amount.

TBI filed a second motion for summary judgment on the remaining claim arguing that (1) any attempt to negotiate price with Plaintiff would be futile,[1] and (2) even if Plaintiff won the bid, his company was technically incompetent to perform the work and would therefore never have been awarded the contract. The district court agreed and entered summary judgment against Plaintiff on the final claim.

On appeal, Plaintiff makes a number of unsupported allegations of error, generally attacking the process and outcome of his case. After carefully reading Plaintiff's briefs as well as the entire record in this case, we conclude that his arguments before this court are meritless. The district court gave Plaintiff significant benefit of the doubt in his pleadings as well as multiple chances to provide materials in support of his claims. That court carefully reviewed and addressed each of Plaintiff's claims as presented in his complaint and materials at

---

[1] As noted by the district court, at this summary judgment stage Plaintiff produced no affidavits or other evidence responding to or contradicting TBI's motion and, instead, chose to generally criticize TBI's affidavits as improper. Relying on Plaintiff's own statements and conduct demonstrating his refusal to further negotiate, the district court properly concluded that this question did not present a genuine issue of material fact. *See Anderson,* 477 U.S. at 247-48 ("By its very terms, [the Rule 56(c)] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

the summary judgment stage.  We see no error, and affirm the court's decision for substantially those reasons as stated in orders dated August 26, 1999, and August 8, 2001.

### III.  No. 01-4080

As with energy producers operating on the Wind River Reservation, producers operating on the Uintah and Ouray Reservations are contractually obligated to give subcontracting preference to members of the Ute Tribe.  In October 1997 CIG Exploration, Inc. (CIG), Coastal's predecessor in interest, entered into a Joint Management Lease with the Ute Tribe.  That lease included a provision that further bound CIG to tribal preference obligations contained in the Exploration and Development Agreement originally granting CIG the exclusive right to conduct oil and gas operations on portions of the Uintah and Ouray Reservations.

In April 1997 Plaintiff sent a letter to Coastal indicating his desire to enter into a business relationship. [2]  One week later Coastal informed Plaintiff that it required potential suppliers of tubular goods to qualify before competitively

---

[2]     At the time, Plaintiff had been granted a "Registration of an Indian Owned and Operated Business" by the Ute Tribe for purposes of tribal preferences on the Uintah and Ouray Reservations for the period between February 27, 1997 and February 27, 1998.  The record indicates that Plaintiff was denied actual membership or enrollment into the Ute Tribe.  The record also indicates FACS was involuntarily dissolved by the Utah Department of Commerce on March 1, 1996, for failure to file an annual report.

bidding on projects. Thus, Coastal requested a copy of Plaintiff's product liability insurance policy and audited financial statements. Plaintiff replied in September 1999, informing Coastal of his tribal preference status (while also admitting it had expired due to his litigation in Wyoming), asking that he be Coastal's exclusive vendor of casing and tubing products, and making various demands concerning specific terms in the proposed subcontract. In October 1999 Plaintiff sent additional letters to Coastal stating that if he did not receive a formal response, he would file a civil complaint. Coastal responded by telephone and by letter, informing Plaintiff once more of its pre-qualification and bidding requirements and asking for additional information to establish FACS as an approved vendor qualified to bid on Coastal projects. Plaintiff did not submit the requested information.

In December 1999 Plaintiff sued in Utah federal court, alleging violations of his rights under Article VI and the Fourteenth Amendment of the United States Constitution. Specifically, Plaintiff alleged that (1) Coastal violated the 1868 Treaty and an 1864 executive order [3] by unlawfully and criminally authorizing non-Indian businesses to work on the Uintah and Ouray Reservations, thereby denying Plaintiff an opportunity to work; (2) Coastal failed to comply with tribal hiring preferences by hiring non-Indian subcontractors, thereby discriminating

---

[3]     The "executive order" attached to Coando's complaint is in fact an Act of the Thirty-Eighth Congress to vacate and sell the existing Indian reservations in Utah and to settle the Indians of that territory into the Uinta Valley.

-8-

against Plaintiff; (3) Coastal unlawfully required Plaintiff to competitively bid on projects in an attempt to get him to implicitly authorize the criminal trespassing of non-Indians on reservation land; (4) Coastal unlawfully required Plaintiff to furnish records and qualify as an approved vendor; and (5) Coastal conspired with other oil companies (including TBI) to falsely and unlawfully have Plaintiff arrested and placed in Utah state prison to avoid hiring him.

Coastal moved to dismiss, or, in the alternative, for summary judgment. The district court dismissed all five claims for failure to state a claim under Federal Rule 12(b)(6).

On appeal, Plaintiff again makes numerous unsupported allegations of error that we conclude are without merit. As in the previous case, the district court generously construed Plaintiff's complaint and carefully addressed each of his claims. We see no error, and therefore we affirm that court's decision for substantially the same reasons as set forth in the district court's order filed March 26, 2001. [4]

---

[4] In connection with his appeal in this case, Plaintiff has filed a document titled "Notification of Action Initiated by Appellees or State Utah Jeopardize Personal Safety Appellant [ *sic*]." At the time of its filing, Plaintiff was incarcerated in the Central Utah Correctional Facility in Gunnison, Utah (CUCF). In that document, Plaintiff alleges a particular female guard, formerly a bounty hunter for the State of Utah, has purposefully obtained employment with the CUCF to persuade African American inmates to assault Plaintiff and ultimately prevent his release. Plaintiff claims that this action benefits the State of Utah, which would otherwise be adversely affected by a decision in this court against Coastal. We fail to see any merit whatsoever in this attenuated claim. Construing the document to be a motion requesting some relief by this court, the motion is

## IV. No. 01-8072

In November 1999, Plaintiff demanded that TBI make him its exclusive vendor for oilfield casing and tubular products. In accordance with its customary business practice, TBI responded by asking Plaintiff for verification of his status as a TERO-certified contractor as well as his technical qualifications, and by submitting a bid package to him for projects on the Wind River Reservation for the year 2000. Plaintiff refused to bid on any projects and instead filed suit against TBI and others in Wyoming federal court.

In his complaint, Plaintiff again claimed multiple violations of his rights under Article VI and the Fourteenth Amendment of the United States Constitution. Plaintiff alleged that (1) TBI violated the 1868 Treaty by hiring non-Indian vendors to work on the Wind River Reservation; (2) TBI breached its agreement to abide by Tribal Resolution 4967; (3) TBI defamed Plaintiff by requesting that he submit technical qualifications and bid sheets; (4) TBI unlawfully required Plaintiff to competitively bid on projects in an attempt to get

_____

denied.

On June 13, 2002, Plaintiff also filed a "Motion for Restraining Order and Included Motion for Immediate Hearing," in which he requests this court to order Coastal as well as other non-Indian vendors to cease work on the Uintah Reservation or, alternatively, to order Coastal to enter into an exclusive contract with his company. On June 21, 2002, Plaintiff filed a request to expedite that motion. Because Plaintiff's motion is based on the same claims that the district court properly dismissed as meritless, we conclude that those claims also do not warrant injunctive relief. Therefore, both the June 13 motion and the June 21 request to expedite that motion are denied.

him to implicitly authorize the criminal trespassing of non-Indians on reservation land; and (5) TBI libeled/slandered Plaintiff by requesting a restraining order against him, and that TBI conspired to falsely and unlawfully have him arrested and incarcerated so as to prevent him from working or filing complaints. In addition to monetary damages, Plaintiff sought a restraining order against TBI or, in the alternative, requested the court to order TBI to use FACS as its exclusive vendor of oilfield casing and tubing products during the pendency of the litigation.

TBI moved to dismiss the complaint alleging lack of subject matter jurisdiction, insufficiency of process and service of process, and failure to state a claim upon which relief can be granted. The district court granted TBI's motion, concluding that dismissal of Plaintiff's complaint was appropriate under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Consequently, while the court decided that it lacked subject matter jurisdiction over Plaintiff's complaint, it nevertheless analyzed the merits of Plaintiff's claims and concluded that "[d]ismissal with prejudice is appropriate because the Court is of the opinion that the Plaintiff could not assert a meritorious claim based on the facts alleged, and that to allow Plaintiff the opportunity to amend his Complaint would be futile." R., Vol. II, Doc. 28 at 8. Such an analysis and conclusion, however, is contrary to the court's decision that it lacked subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot

-11-

proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quotation omitted); *Hernandez v. Conriv Realty Assocs.,* 182 F.3d 121, 123 (2d Cir. 1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist."). We conclude that the district court erred in holding that it had no subject matter jurisdiction over Plaintiff's complaint. However, we affirm the district court's dismissal based upon Plaintiff's failure to allege facts upon which relief can be granted.

Section 1331 of Title 28 of the United States Code confers original jurisdiction on the district courts to hear civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. [5] In many cases, the threshold issue of whether a complaint raises a colorable federal question is clearly evident from the language of the complaint itself. In others, that language may only confuse the matter. Nevertheless, district courts must be aware of the sometimes fine distinction between a federal claim not wholly insubstantial and frivolous for jurisdictional purposes, but which nonetheless fails

[5] Plaintiff's complaint includes a formal jurisdictional statement that contains a recitation of each parties' residency. We agree with the district court, however, that these jurisdictional allegations "neither satisfy the requirement of complete diversity under 28 U.S.C. § 1332, nor do they suggest that the jurisdictional amount of $75,000 is met." R., Vol. 2, Doc. 28 at 4-5.

as a matter of law on the merits. Language from the Supreme Court's seminal case of *Bell v. Hood,* 327 U.S. 678 (1946), is instructive:

> Before deciding that there is no jurisdiction, the District Court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States. For to that extent the party who brings a suit is master to decide what law he will rely upon, and . . . does determine whether he will bring a 'suit arising under' the . . . [Constitution or laws] of the United States by his declaration or bill."

*Bell,* 327 U.S. at 681 (quotation and citation omitted). In *Bell,* the Court emphasized the importance that the district court look to the pleader's purpose for the suit, holding that "where the complaint . . . is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions . . . must entertain the suit." *Id.* at 681-82. "The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy." *Id.* at 682. The Court concluded:

> Jurisdiction, therefore, is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.

*Id.*

-13-

The exceptions noted by the Court in *Bell* are that "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 682-83. The Supreme Court has described these exceptions, going to the substantiality of the federal question, using a variety of phrases. *See Hagans v. Lavine,* 415 U.S. 528, 536-37 (1974) (collecting cases); *Goosby v. Osser,* 409 U.S. 512, 518 (1973) (same). "According to Hagans, the [substantial federal question] doctrine will warrant dismissal when the claim is (1) wholly insubstantial or obviously frivolous, (2) foreclosed by prior cases which have settled the issue one way or another, or (3) so patently without merit as to require no meaningful consideration." *Wiley v. Nat'l Collegiate Athletic Ass'n,* 612 F.2d 473, 477 (10th Cir. 1979).

Cases in this circuit demonstrate that the district court's task in assessing the substantiality of a claim for purposes of jurisdiction can be difficult. *See, e.g., Junior Chamber of Commerce of Rochester, Inc. v. United States Jaycees,* 495 F.2d 883, 886 (10th Cir. 1974). This is especially true in cases, such as this one, that are brought by pro se litigants who may lack the legal training necessary to allege any more than facts sufficient to describe his or her alleged injury. "Under 28 U.S.C. § 1331, federal question jurisdiction must appear on the face of

a plaintiff's well-pleaded complaint. The complaint must identify the statutory or constitutional provision under which the claim arises and allege sufficient facts to show that the case is one arising under federal law." *Martinez v. United States Olympic Comm.,* 802 F.2d 1275, 1280 (10th Cir. 1986) (citations omitted). While this court has held that mere allegations as to the presence of an unspecified federal question is generally insufficient to meet this burden, *see id.,* it has also defined the phrase "colorable federal claim" generously and liberally, s*ee Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1240 (10th Cir. 2001).

Although this case presents a borderline situation, given the Plaintiff's pro se status and the considerable benefit of the doubt we allow for his pleadings, we conclude that his complaint is not wholly insubstantial and frivolous. Among other things, Plaintiff's complaint was drawn alleging facts to claim a right to recover under the Due Process and Equal Protection Clauses of the United States Constitution for perceived violations of an 1868 Treaty between the United States and the Eastern Band Shoshone Indian Tribe. Plaintiff's assertions involving the construction of that treaty are a matter of federal concern that conferred jurisdiction on the district court notwithstanding the failure of those averments to sustain his cause of action. *See Bell,* 327 U.S. at 682; *cf. Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 677 (1974) (holding Indian claim of

-15-

possessory rights to tribal lands, particularly when confirmed by treaty, plainly asserts controversy arising under § 1331).

Although the district court erred in concluding that it lacked subject matter jurisdiction over Plaintiff's claim, after carefully reviewing the parties' briefs,[6] as well as the entire record in this case, we are unpersuaded by Plaintiff's other allegations of error. Therefore, we agree with the district court's analysis and decision to dismiss Plaintiff's complaint for failure to state a claim under Rule 12(b)(6).

The judgments of the United States District Court for the District of Utah and the District of Wyoming are AFFIRMED. All other outstanding motions

---

[6] In connection with this appeal, Plaintiff has also filed a motion for reconsideration of this court's January 8, 2002 order denying his request for an extension of time to file a reply brief. Although his request was denied, Plaintiff filed his "response brief" on January 22, 2002, one month beyond his original deadline. We deny the motion, noting only that neither the request for reconsideration nor the reply brief itself provide additional substance to Plaintiff's arguments on appeal, or otherwise justify a departure from the court's filing deadlines.

associated with these appeals and not addressed in this order and judgment are

DENIED as moot.

Entered for the Court


William J. Holloway, Jr.
Circuit Judge
