FILED
United States Court of Appeals
Tenth Circuit

October 9, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ARTHUR FIRSTENBERG,

        Plaintiff-Appellant,

v.

CITY OF SANTA FE, NEW MEXICO;
AT&T MOBILITY SERVICES, LLC,

        Defendants-Appellees.

No. 11-2156

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:11-CV-00008-JAP-WDS)**

---

Lindsay A. Lovejoy, Jr., Law Office of Lindsay A. Lovejoy, Jr., Santa Fe, New Mexico, for Plaintiff-Appellant.

Marcos D. Martínez, Assistant City Attorney, Santa Fe, New Mexico (Eugene I. Zamora, City Attorney, Santa Fe, New Mexico, with him on the brief), for Defendant-Appellee City of Santa Fe.

Hans J. Germann, Mayer Brown LLP, Chicago, Illinois (John E. Muench and Kyle J. Steinmetz, Mayer Brown LLP, Chicago, Illinois; Mark A. Basham, Basham & Basham P.C., Santa Fe, New Mexico, with him on the brief), for Defendant-Appellee AT&T Mobility Services, LLC.

---

Before **BRISCOE**, Chief Judge, **BALDOCK** and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

Electromagnetic radiation is a form of energy ubiquitous in our modern world, associated with everything from WiFi networks to microwave ovens to power lines. Most of us do not notice it. Some individuals, however, apparently suffer from a condition known as electromagnetic hypersensitivity ("EHS"), which requires them to avoid exposure to sources of electromagnetic radiation. These sources include cell-phone towers, sometimes called "base stations," which emit a form of energy known as radiofrequency ("RF") radiation. *See generally* Federal Communications Commission, Radio Frequency Safety, http://transition.fcc.gov/oet/rfsafety/.

Arthur Firstenberg allegedly suffers from EHS, and he brought this lawsuit against the City of Santa Fe, New Mexico ("City"), and AT&T Mobility Services, LLC ("AT&T"), asserting that signal upgrades at AT&T base stations in Santa Fe adversely affected his health and that the City is required to regulate those upgrades. Litigation proceeded apace and the district court dismissed Mr. Firstenberg's action against the City and AT&T for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). And Mr. Firstenberg appealed.

After a full round of appellate briefing, we noted a potential jurisdictional infirmity: the failure of Mr. Firstenberg's complaint to satisfy the well-pleaded complaint rule for purposes of federal-question jurisdiction under 28 U.S.C. § 1331. We asked for supplemental briefing, which the parties provided. They all insisted that federal jurisdiction is proper. After careful review, we disagree. We are therefore constrained to reverse the district court's dismissal orders and resulting judgment and to remand the case

to the district court with directions to vacate its judgment and remand the case to state court.

**I**

Mr. Firstenberg is a resident of Santa Fe. As an EHS sufferer, he must avoid exposure to RF radiation from cell phones, base stations, and other sources. AT&T owns and operates several base stations in Santa Fe. In November 2010, AT&T upgraded its broadcast signals from 2G (second generation) to 3G (third generation),[1] increasing the amount and intensity of RF radiation from its base stations and causing Mr. Firstenberg to suffer insomnia, irritability, eye pain, dizziness, nausea, and itching.

Over the years, AT&T has been granted "special exceptions" under the City's Land Development Code ("Code") to construct its base stations. AT&T did not apply for or obtain additional special exceptions prior to initiating the 3G broadcasts. Mr. Firstenberg believes this was improper under the Code and points to § 14-3.6(B)(4)(b), which requires the City's Board of Adjustment to approve an additional special exception if there is a "more intense use" of an existing structure.[2]

---

[1] As the district court explained, "Third Generation or '3G' internet access technology provides users with global cell phone roaming capabilities, better voice quality using wireless internet access, and simultaneous voice and data services. Second Generation or '2G' internet access technology provides internet and mobile data services at a slower rate." *Firstenberg v. City of Santa Fe*, 782 F. Supp. 2d 1262, 1267 n.5 (D.N.M. 2011).

[2] At the time, § 14-3.6(B)(4)(b) provided in full: "The special exceptions listed in this chapter, when granted, are considered granted for a specific use and intensity, any change of use or more intense use shall be allowed only if such change is

(continued...)

Proceeding pro se, Mr. Firstenberg petitioned for a writ of mandamus in New Mexico state court, naming the City and AT&T as defendants. He claimed that "[t]he City of Santa Fe has a duty under § 14-3.6(B)(4)(b) to require AT&T to apply for a new Special Exception . . . for each of its existing base stations before it is permitted to increase their intensity of use." Aplt. App. at 172 (Second Am. Pet. for Writ of Mandamus, filed Dec. 29, 2010). He also alleged that he suffered from EHS, that he was "a qualified individual with a disability" under the Americans with Disabilities Act ("ADA"), *id.* at 171, and that he was therefore "beneficially interested in the enforcement of this ordinance," *id.* at 172.

Based on his prior experience—specifically, a public hearing at which the Board of Adjustment refused to regulate AT&T's antenna upgrades—Mr. Firstenberg anticipated that the City might raise a preemption defense under Section 704 of the Telecommunications Act of 1996 ("TCA"). Section 704 prohibits local governments from regulating "the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions." 47 U.S.C. § 332(c)(7)(B)(iv). His petition thus set forth the following under the heading "Argument":

_____

[2](...continued)
approved by the Board of Adjustment under a special exception." *Firstenberg*, 782 F. Supp. 2d at 1267 (quoting Santa Fe, N.M. Land Development Code § 14-3.6(B)(4)(b) (2001)) (internal quotation marks omitted). This provision has since been amended and recodified at § 14-3.6(C)(3), but those changes do not affect our decision here.

20. Section 704 of the [TCA] is not the only federal law that the City of Santa Fe must obey. The City also has to obey Title II of the Americans with Disabilities Act, which prohibits public entities from subjecting any person to discrimination by reason of their disability (42 USC § 12132), and the Fifth and Fourteenth Amendments of the Constitution, which guarantee to every citizen the equal protection of the laws, and provide that no citizen be deprived of life, liberty, or property without due process. . . .

21. There is actually no conflict between the [TCA] and other federal laws. . . . The [TCA] contains no language expressly modifying, impairing, or superseding the ADA. In fact the only mention of the ADA in the [TCA] (Section 255) requires compliance with it. Neither does the [TCA] supersede or modify the US Constitution, nor could it. . . . If regulation of radio frequency radiation is required in order to comply with the Americans with Disabilities Act or the Constitution, a city is obligated to do so.

22. The City of Santa Fe is required to enforce its laws, as well as to take jurisdiction over the intensity of radio frequency radiation from permitted facilities, in order to fulfill its obligations under the ADA and the Constitution.

Aplt. App. at 176–77. In the next section, entitled "Cause of Action," Mr. Firstenberg reiterated that the City "has a clear legal duty to enforce the requirements of its Land Development Code, including, in particular, § 14-3.6(B)(4)(b)," that the City "has refused to enforce that section of the Code," and that mandamus was therefore appropriate. *Id.* at 178. In this section, Mr. Firstenberg made no reference to the ADA or the U.S. Constitution. He was similarly silent regarding these sources of federal law in his prayer for relief. There, Mr. Firstenberg requested the court to "issue a writ of mandamus directing the City of Santa Fe . . . to commence enforcement proceedings, as provided in . . . its [Code], by giving notice to AT&T that it must discontinue its 3G broadcasts within

-5-

the City of Santa Fe within 30 days, and that it must submit an application for a Special

Exception for each base station from which it proposes to broadcast such signals." *Id.*

The state court issued an alternative writ of mandamus, ordering the City to

prohibit the 3G broadcasts unless and until special exceptions were granted or to show

cause why it had not done so. AT&T and the City then removed the action to federal

district court, asserting jurisdiction based on the existence of a federal question under 28

U.S.C. § 1331. They each filed a motion to dismiss for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6). The City joined in the arguments of AT&T; as

such, they both contended that § 14-3.6(B)(4)(b) did not apply to broadcast-signal

upgrades, but that even if it did, the TCA preempted Mr. Firstenberg's claim. They also

argued that Mr. Firstenberg was "not making any claim under the ADA" and that even if

he was, the claim failed. Aplt. App. at 197 (AT&T Mem. in Supp. of Mot. to Dismiss,

filed Jan. 28, 2011).

The district court granted the defendants' motions to dismiss and it issued separate,

though similar, opinions.[3] The court briefly addressed its jurisdiction over Mr.

Firstenberg's claims:

> Plaintiff's claim hinges on whether the City has authority under the
> [Code] to regulate wireless transmissions. To resolve this issue the
> Court must answer a "substantial question of federal law," which is
> whether the City can enforce its [Code] in light of [Section 704 of the

---

[3]     The opinion granting the City's motion to dismiss was published. *See Firstenberg*, 782 F. Supp. 2d at 1262. The opinion granting AT&T's motion to dismiss was not. *See* Aplt. App. at 252 (Am. Mem. Op. & Order, filed Apr. 12, 2011).

TCA]. In addition, Plaintiff invokes his right to protection under the ADA and under the Equal Protection and Due Process Clauses of the United States Constitution.

*Id.* at 258–59 (citation omitted) (quoting *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994)). The court then reached the merits of the claims and defenses, concluding that the TCA preempted the City's authority to regulate AT&T's broadcast upgrades. The court construed Mr. Firstenberg's complaint—that is, his state-court mandamus petition[4]—as raising separate equal protection, procedural due process, and substantive due process claims. The court briefly addressed those claims and denied each of them. Mr. Firstenberg timely appealed and retained counsel.

After a full round of appellate briefing but prior to oral argument, we asked the parties to file supplemental briefs addressing whether Mr. Firstenberg's complaint was sufficiently "well-pleaded" to satisfy the requirements for federal-question jurisdiction under 28 U.S.C. § 1331. The parties filed supplemental briefs, and all contended that the district court's jurisdiction was proper. We heard oral argument on both the jurisdictional and merits issues. Contrary to the parties' arguments, we conclude that the district court lacked subject-matter jurisdiction over Mr. Firstenberg's case, and, consequently, so

---

[4]     We pause to note that what we refer to in this opinion as Mr. Firstenberg's complaint is his Second Amended Petition for Writ of Mandamus. This was filed on December 28, 2010—*after* the state court actually issued the alternative writ of mandamus on December 22, 2010. The second amended petition was filed in order to change the name of one of the defendants from "AT&T, Inc." to "AT&T Mobility Services, LLC," the local New Mexico entity. Despite that chronological wrinkle, for practical purposes, we, like the district court, look to the second amended petition as Mr. Firstenberg's complaint.

-7-

do we.

**II**

Federal subject matter jurisdiction is elemental. It cannot be consented to or waived, and its presence must be established in every cause under review in the federal courts. *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1135 n.4 (10th Cir. 2010) ("[W]e must satisfy ourselves not only of our own jurisdiction, but also that of the lower courts in the cause under review." (quoting *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1164 (10th Cir. 2004)) (internal quotation marks omitted); *accord New York v. Shinnecock Indian Nation*, 686 F.3d 133, 137 (2d Cir. 2012). A case originally filed in state court may be removed to federal court if, but only if, "federal subject-matter jurisdiction would exist over the claim." *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220 (10th Cir. 2011). There are different bases for the exercise of federal jurisdiction. Only one is at issue here: the district court's jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331—so-called federal-question jurisdiction.

To assess the presence of a federal question, our task is to look to the "face of the complaint." *Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d 1162, 1165 (10th Cir. 1999) ("[F]ederal question jurisdiction must appear on the face of the complaint . . . ."). We must "look to the way the complaint is drawn" and ask, is it "drawn so as to claim a right to recover under the Constitution and laws of the United States"? *Bell v. Hood*, 327 U.S. 678, 681 (1946).

For a case to arise under federal law within the meaning of § 1331, the plaintiff's "well-pleaded complaint" must establish one of two things: "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (quoting *Morris*, 39 F.3d at 1111) (internal quotation marks omitted); *accord Gilmore v. Weatherford*, --- F.3d ----, 2012 WL 3797736, at *8 (10th Cir. 2012); *see also Viqueira v. First Bank*, 140 F.3d 12, 17 (1st Cir. 1998) ("[T]he well-pleaded complaint rule restricts the exercise of federal question jurisdiction to instances in which a federal claim is made manifest within the four corners of the plaintiffs' complaint."). "The 'substantial question' branch of federal question jurisdiction is exceedingly narrow—a 'special and small category' of cases." *Gilmore*, --- F.3d ----, 2012 WL 3797736, at *8 (quoting *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

The well-pleaded complaint rule makes the plaintiff the "master" of his claim. *Nicodemus*, 440 F.3d at 1232 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). The plaintiff can elect the judicial forum—state or federal—based on how he drafts his complaint. Although he "may not circumvent federal jurisdiction by omitting federal issues that are essential to his . . . claim," *id.*, he can nevertheless "avoid federal jurisdiction by exclusive reliance on state law," *id.* (quoting *Caterpillar*, 482 U.S. at 392) (internal quotation marks omitted). "Neither the plaintiff's anticipation of a federal defense nor the defendant's assertion of a federal defense is sufficient to make the case

arise under federal law." *Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006); *see Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, --- F.3d ----, 2012 WL 3590862, at *5 (10th Cir. 2012) ("To determine whether [a] claim arises under federal law, [courts] examine the well[-]pleaded allegations of the complaint and ignore potential defenses . . . ." (alterations in original) (ellipsis in original) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)) (internal quotation marks omitted)).[5]

## A

Before specifically examining the averments of Mr. Firstenberg's complaint, we pause to address an important preliminary matter: the pro se nature of his complaint. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1073 n.7 (10th Cir. 2008) ("The fact that plaintiffs were represented by counsel during this appeal does not affect the solicitous construction we must afford their earlier pro se filings."). "We read *pro se* complaints more liberally than those composed by lawyers." *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). However, as we often reiterate, the generous construction that we afford pro se pleadings has limits, and we must avoid becoming the plaintiff's advocate. *See, e.g.*, *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009). Though we do not hold the pro se plaintiff to the standard of a trained lawyer, we nonetheless rely on "the plaintiff's statement of his own cause of action." *Turgeau*, 446

---

[5]     The "exception" or "corollary" to the well-pleaded complaint rule known as the complete-preemption doctrine is not implicated in this case. *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996); *see Devon Energy*, --- F.3d ----, 2012 WL 3590862, at *5 n.4, *6 (explicating the complete-preemption doctrine).

F.3d at 1060 (quoting *Schmeling*, 97 F.3d at 1339) (internal quotation marks omitted).

Thus, we "may not rewrite a [complaint] to include claims that were never presented." *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (quoting *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998)) (internal quotation marks omitted).

Quite often we are called upon to apply these liberal-construction principles where the focus is on the substance of the claim—*viz.*, the question that we must determine is whether the pro se plaintiff has sufficiently pleaded a substantive claim for relief. *See, e.g.*, *Dudnikov*, 514 F.3d at 1073 ("[C]rediting the complaint as true as we must at this stage of the litigation, and further giving it the solicitous construction due a pro se filing, the facts described above are sufficient to permit an inference that defendants tortiously interfered with plaintiffs' business." (footnote omitted) (citation omitted)); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."). However, we are content to assume without deciding that these same liberal-construction principles apply with full force to the distinct jurisdictional inquiry we are obliged to undertake here. *Compare Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 474 (1987) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation[.]" (quoting *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17 (1951)) (internal quotation marks omitted)), *and Sac & Fox Nation*,

193 F.3d at 1168 ("[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." (alteration in original) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)) (internal quotation marks omitted)), *with Coando v. Coastal Oil & Gas Corp.*, 44 F. App'x 389, 395–96 (10th Cir. 2002) (affording plaintiff's pro se complaint "the considerable benefit of the doubt" as to federal-question jurisdiction, but stating: "[T]he district court's task in assessing the substantiality of a claim for purposes of [federal-question] jurisdiction can be difficult. This is especially true in cases, such as this one, that are brought by pro se litigants who may lack the legal training necessary to allege any more than facts sufficient to describe his or her alleged injury." (citation omitted))

We must determine whether the averments of Mr. Firstenberg's complaint present a federal question upon which the district court could properly ground its subject matter jurisdiction. In other words, quite apart from the substantive viability of those averments, we must assess whether they satisfy the well-pleaded complaint rule, for purposes of establishing federal-question jurisdiction. And we assume that liberal-construction principles squarely apply to that jurisdictional inquiry. Even affording a liberal construction to the averments of Mr. Firstenberg's complaint, however, we conclude that they are not sufficient to demonstrate the presence of federal-question jurisdiction. Accordingly, the district court lacked subject-matter jurisdiction over this case.

-12-

**B**

Our review of the complaint—a petition seeking mandamus under New Mexico law—convinces us that it does not state a claim arising under federal law within the meaning of § 1331. Plainly, the pith of the complaint, which Mr. Firstenberg never sought to amend, is a state-law cause of action. Mr. Firstenberg asserted a claim based on Code § 14-3.6(B)(4)(b), arguing that the City was duty-bound to regulate AT&T's 3G broadcasts. Federal law neither created this cause of action nor is federal law a necessary element of it. It is purely a state-law claim.

Of course, Mr. Firstenberg did make reference in the complaint to four different sources of federal law: the TCA, the ADA, the Fourteenth Amendment, and the Fifth Amendment. The parties argue that invocation of these sources of federal law is sufficient to bring the case into federal court. We do not agree.

First, as to the TCA, Mr. Firstenberg made no claim under this statute. Rather, his reference to it was in anticipation of the City's and AT&T's preemption defense based on Section 704. But neither anticipation by a plaintiff nor assertion by a defendant of a defense based on federal law—including a preemption defense—is enough to confer federal jurisdiction. *See Caterpillar*, 482 U.S. at 393 ("[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."); *Nicodemus*, 440 F.3d

-13-

at 1232.[6]

Next, as to the ADA and the Constitution, all parties argue that Mr. Firstenberg's complaint states affirmative claims under these laws. As support, they point to the following language in the complaint: "The City of Santa Fe is required to enforce its laws, as well as to take jurisdiction over the intensity of [RF] radiation from permitted facilities, *in order to fulfill its obligations under the ADA and the Constitution*." Aplt. App. at 177 (emphasis added). This, however, will not pass jurisdictional muster.

The district court's task—and consequently, ours, too—is to "look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States." *Bell*, 327 U.S. at 681. A right to recover *under* federal law cannot be deemed to be present through the assertion of a state-law cause of action just because that assertion is predicated on the notion that compliance *with that state law* would effectively vindicate the plaintiff's federal rights. Drawing up a complaint that way, as Mr. Firstenberg did here, simply does not satisfy the well-pleaded

---

[6] The Fourth Circuit faced a situation very similar to the one we confront here and reached the same conclusion. *See Pinney v. Nokia, Inc.*, 402 F.3d 430 (4th Cir. 2005). There, the plaintiffs brought state-law claims against Nokia, contending that their wireless phones emitted unsafe levels of RF radiation. The district court thought that federal-question jurisdiction existed because "(1) . . . Nokia would raise the affirmative defense that the state law claims are preempted by the [Federal Communications Act] and federal RF radiation standards and (2) . . . the . . . plaintiffs would be called upon to rebut that defense." *Id.* at 445–46. The Fourth Circuit found this to be error, concluding that although "the affirmative defense of preemption" was "lurking in the background," that did not transform the plaintiffs' claims "into ones arising under federal law." *Id.* at 446 (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 117 (1936)) (internal quotation marks omitted). That reasoning applies with equal force here.

complaint rule. *See Gully*, 299 U.S. at 116 ("By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby. With no greater reason can it be said to arise thereunder because permitted thereby." (citation omitted)).

The thrust of Mr. Firstenberg's complaint remains a state-law-created claim for relief. *See* Aplt. App. at 177–78 (styling as his "Cause of Action" the claim that the City "has a clear legal duty to enforce the requirements of its Land Development Code, including, in particular, § 14-3.6(B)(4)(b)"). And the necessary elements of that claim do not "rise or fall on the resolution of a question of federal law." *Pinney*, 402 F.3d at 449; *see MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002) (holding that a complaint alleging state-law torts and whose only reference to federal law was an allegation that defendant's facility "was maintained in violation of federal regulations *as well as* in violation of state and local regulations" did not "suffice to render the action one arising under federal law"); *Martinez v. U.S. Olympic Comm.*, 802 F.2d 1275, 1280 (10th Cir. 1986) (holding that complaint that alleged common-law negligence and conclusorily asserted that federal constitutional rights "were violated" and "federal questions [we]re involved" did not satisfy well-pleaded complaint rule (quoting portions of the complaint) (internal quotation marks omitted)). Indeed, as noted, Mr. Firstenberg makes no reference to the ADA or the U.S. Constitution in the "Cause of Action" section of his complaint, and his complaint's prayer for relief seeks only an order directing the City to enforce its Code.

-15-

This would be a different case had Mr. Firstenberg asserted in his complaint that the City's failure to regulate AT&T's 3G broadcasts resulted in violations of the ADA or the Constitution. Such a complaint would almost certainly state a claim "directly under" federal law. *See Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 69 n.13 (1978). However, Mr. Firstenberg's complaint seems to invoke the ADA and the Constitution for an altogether different purpose—not for stating affirmative claims thereunder, but for inoculating against the federal preemption defense that he rightly predicted would emerge in the case.

Mr. Firstenberg's argument was that, whatever the preemptive effect of Section 704, it was overridden by the ADA and the Constitution—*viz.*, that the City had to enforce § 14-3.6(B)(4)(b) in order to fulfill its other federal obligations, Section 704 notwithstanding. *See id.* at 176–77 ("Section 704 of the [TCA] is not the only federal law that the City of Santa Fe must obey. . . . There is actually no conflict between the [TCA] and other federal laws."). This argument—embodied in his complaint's terms—was plainly designed to parry the preemption defense. But federal-question jurisdiction turns upon thrusts, not parries, and anticipatory rebuttals based on federal law do not confer jurisdiction any more than anticipated federal defenses do. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908) ("It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution . . . ."); *Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 541 (9th Cir. 2011) (noting that a "potential response to a

-16-

defense" based on federal law did not satisfy the well-pleaded complaint rule); *Bracken v. Matgouranis*, 296 F.3d 160, 163–64 (3d Cir. 2002) ("[S]peculation on possible defenses and responding to such defenses in an attempt to demonstrate that a federal question would likely arise is not a necessary element of a plaintiff's cause of action, and thus does not create federal subject matter jurisdiction.").

Our conclusion in this regard is not altered even if we were to look beyond Mr. Firstenberg's complaint and liberally construe the allegations of other papers that he filed in the district court. As we noted, after removing Mr. Firstenberg's action from state court to federal district court, AT&T moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In that motion, with the City joining, AT&T contended that § 14-3.6(B)(4)(b) did not apply to broadcast-signal upgrades, but that even if it did, the TCA preempted Mr. Firstenberg's claim. They also argued that Mr. Firstenberg was "not making any claim under the ADA" and that even if he was, the claim failed. Aplt. App. at 197. Specifically, AT&T argued that Mr. Firstenberg's "status under the ADA [wa]s irrelevant because federal law [i.e., the TCA] expressly bars the relief [he] seeks," and, "[a]s a result, the Court need not consider the ADA further." *Id.*

Mr. Firstenberg, proceeding pro se, responded that § 14-3.6(B)(4)(b) imposed a non-discretionary duty on the City to regulate AT&T's signal upgrades. He acknowledged the force of the defendants' preemption argument. But, employing it as *a defense* to preemption, Mr. Firstenberg insisted that the Fourteenth Amendment overrode

-17-

the TCA's preemptive effect. *See* Aplt. App. at 216 (Resp. to AT&T Mot. to Dismiss, filed Feb. 14, 2011) ("If a state or local government needs to regulate radio frequency radiation in order to protect the Fourteenth Amendment rights of citizens, then it is required to do so, regardless of Section 704 of the [TCA]."). As for the ADA, he conceded that his claim was "not 'under' the ADA" and explained that he was "not asking the Court to determine that the City is in violation of the ADA." *Id.* at 219. And we do not read his invocation of the Constitution any differently. *See id.* ("Rather, Plaintiff alleges . . . that the City is required to enforce that ordinance [§ 14-3.6(B)(4)(b)] in a manner consistent with its obligations under the ADA and the Fourteenth Amendment."). In essence, Mr. Firstenberg's argument was simply that "the City is required to enforce that ordinance [§ 14-3.6(B)(4)(b)] in a manner consistent with its obligations under the ADA and the Fourteenth Amendment." *Id.*

Accordingly, even affording a liberal construction to Mr. Firstenberg's post-complaint filings, we cannot conclude that Mr. Firstenberg's references to federal law are sufficient to demonstrate that his complaint is founded on federal law. Thus, we conclude that the averments of Mr. Firstenberg's complaint fail to satisfy the well-pleaded complaint rule, for purposes of demonstrating federal-question jurisdiction.

The parties interpose a couple of arguments to the contrary, but we do not find them persuasive. The City contends that "the TCA, ADA, the Fourteenth Amendment, and the Fifth Amendment are essential elements of" Mr. Firstenberg's claim, without which the City "would owe no duty to" Mr. Firstenberg. City Supp. Br. at 5. That is

-18-

plainly wrong. Mr. Firstenberg's claim is a state-law claim in form and substance, and no element of the claim necessarily turns upon, or requires a court to construe, any federal statute or the Constitution. *Cf. Gilmore*, --- F.3d ----, 2012 WL 3797736, at *12 (holding federal-question jurisdiction was present where "plaintiffs have framed their state-law claim in such a fashion that they succeed only if they are correct that the defendants failed to meet federal requirements for [chat] removal").

Relatedly, AT&T asserts that the Supreme Court's decision in *City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997), supports jurisdiction here. But that case stands for the unremarkable proposition that federal-question jurisdiction exists over a state-law cause of action when the "right to relief under state law *requires resolution* of a substantial question of federal law." *Id.* at 164 (emphasis added) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983)) (internal quotation marks omitted). In that case, the plaintiff asserted federal constitutional claims in a state-court complaint for administrative review. *See id.* at 160. Because the federal claims were an essential part of the plaintiff's case-in-chief, they "unquestionably" arose under federal law, and removal was proper. *Id.* at 164; *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 311 (2005) (holding that federal-question jurisdiction existed because the resolution of plaintiff's state-law quiet-title action against defendant necessarily turned on whether the Internal Revenue Service failed under federal law to give proper notice of the seizure of plaintiff's property); *Nicodemus*, 440 F.3d at 1235 (holding that federal-question jurisdiction was

-19-

present because whether plaintiffs could recover on their state-law claims necessarily turned on whether defendant railroad's use of its right-of-way was improper under federal law); *see also Gilmore*, --- F.3d ----, 2012 WL 3797736, at \*12 ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (quoting *Nicodemus*, 440 F.3d at 1232)); *Devon Energy*, --- F.3d ----, 2012 WL 3590862, at \*11–12 (explicating the holdings of *Grable & Sons* and *Nicodemus*).

Here, by contrast, Mr. Firstenberg's claim turns exclusively upon a question of state law. Federal issues enter only by way of a defense and a response to a defense. *See Gully*, 299 U.S. at 117 ("The most one can say is that a question of federal law is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government. A dispute so doubtful and conjectural, so far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states.").

### III

For the reasons stated, we conclude that Mr. Firstenberg's state-court complaint does not articulate a claim arising under federal law within the meaning of § 1331. We therefore **REVERSE** the district court's dismissal orders and resulting judgment and **REMAND** the case to the district court, with instructions to **VACATE** its judgment and remand the case to state court. We express no views on the merits of Mr. Firstenberg's

-20-

state-law claim or on the federal preemption defense raised by the City and AT&T.