**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JERRY GRADY,

               Plaintiff - Appellant,

v.

TANIA GARCIA, Director of C.D.O.C.
T.C. Program; DAVE BOOTH, Director of
Sterling Corr. Fac. T.C. Program;
WESLEY WILSON, Case Manager 3
Sterling Corr. Facility,

               Defendants – Appellees.

No. 12-1151
(D.C. No. 1:10-CV-00347-PAB-CBS)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

     While an inmate in the Colorado Department of Corrections (CDOC), Jerry D.

Grady filed a pro se civil rights complaint based on his experience in a prison substance

---

[*] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R.
34.1(G). This case is submitted for decision on the briefs.

     This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

abuse treatment program and the consequences of his decision to quit the program. He appeals from the district court's grant of summary judgment to defendants. We affirm.

## I. Background

Grady signed an agreement to be placed on the waiting list to enter the prison's substance abuse treatment program. A year later, he entered the program. While enrolled in the program, he did not make any formal complaints concerning his health or his inability to complete the program other than to inform staff he was dyslexic and beginning treatment for Hepatitis C.

Less than six weeks after entering the program, Grady informed David Booth, the prison's alcohol and drug program supervisor, he wanted to quit the program. Grady told Booth he would hurt someone if he was not allowed to leave the program. Grady also noted his various medical conditions and advanced age (65) and claimed he was "too emotionally unstable" to be in the program. (R. at 338.)

Grady's withdrawal from the program triggered a restricted privileges (RP) status review. (R. at 347 ("A restricted privileges (RP) status review shall be initiated for any [CDOC] offender who refuses to participate in, or is terminated from, a [CDOC] sanctioned . . . treatment program to which the offender is assigned.").) The review resulted in his placement on RP status, which prohibited him from having a television and radio in his cell and attending recreation with the general prisoner population. His canteen privileges were also restricted. He filed an internal prison appeal challenging his placement on RP status. The decision was affirmed and he remained on RP status for 105 days.

Grady filed this case against Booth, Tania Garcia, the treatment program's clinical supervisor, and Wesley Wilson, the chairman of the classification committee which placed him on RP status.[1] He asserted an Eighth Amendment cruel and unusual punishment claim and a Fourteenth Amendment due process claim against defendants in both their official and individual capacities. He claimed prison officials forced him to participate in the treatment program as a punitive response to the grievances he filed seeking treatment for his Hepatitis C. He alleged that while enrolled in the treatment program, he was subjected to intimidation, degradation, sleep deprivation, fear, stress and abuse by other inmates. Grady claimed these conditions led to the deterioration of his various medical conditions including degenerative bone disease, rheumatoid arthritis, and Hepatitis C. He said he told Booth the program was exacerbating his medical conditions and asked him to release him from the program, but Booth refused to discuss the issue. Grady also claimed defendants knew he could not complete the program yet forced him to participate and then automatically punished him, i.e., reclassified him to RP status, when he could not complete the program. He alleged his reclassification to RP status (which he claimed is akin to administrative segregation) violated due process because it was non-grievable and resulted in atypical and significant hardship on him.

---

[1] Grady also named Aristedes W. Zavares, the CDOC's Executive Director, Dana Bustos, the CDOC's Mental Health Clinical Director, Kevin Millyard, the prison's warden, and Carl Soares, the prison's assistant warden, as defendants. These individuals were dismissed due to Grady's failure to demonstrate their personal participation in any alleged constitutional violation. Grady does not challenge here their dismissals.

Defendants moved for summary judgment. In a cogent and comprehensive order, the district court granted the motions.

## II. Discussion

The district court concluded the Eleventh Amendment barred Grady's claims against defendants in their official capacities because he did not seek prospective relief but rather monetary damages and a declaratory judgment that defendants violated his rights. *See Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 494-95 & n.3 (10th Cir. 1998) (Eleventh Amendment bars claims against individual defendants in their official capacities if relief sought is monetary damages or a declaration that defendants violated plaintiff's rights in the past).

With regard to the claims against defendants in their individual capacities, the court rejected Grady's Eighth Amendment claim because his conclusory allegations of degradation, humiliation, fear, sleep deprivation, intimidation, and his physical and emotional inability to complete the treatment program "are not sufficiently serious to establish an Eighth Amendment claim, as they are not extreme risks resulting in the denial of the minimal civilized measure of life's necessities." (R. at 1175.) *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (for conditions of confinement to violate the Eighth Amendment, they must be "sufficiently serious"; they "must result in the denial of the minimal civilized measure of life's necessities") (quotations omitted). Moreover, there was no evidence supporting Grady's claim he had been abused by other inmates. The court also rejected Grady's due process claim because the temporary (105 days) conditions of his confinement as a result of RP status—no television and radio in is cell

and loss of canteen privileges and recreational time with the general prison population—did not constitute an "atypical and significant" hardship when compared to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding a deprivation occasioned by prison conditions or a prison regulation is not a liberty interest protected by due process unless it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Indeed, because prison policy subjects all inmates who refuse to participate in an assigned treatment program to RP status, it can hardly be said to be "atypical." *See Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 809 (10th Cir. 1999) (in determining whether the government has imposed an atypical and significant hardship on the plaintiff in relation to the ordinary incidents of prison life, we consider "the duration and degree of plaintiff's restrictions *as compared with other inmates*") (emphasis added).

We review de novo a district court's grant of summary judgment. *Garcia v. City of Albuquerque*, 232 F.3d 760, 765 (10th Cir. 2000). Even construing Grady's pro se pleadings liberally, *see Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1024 (10th Cir. 2012), we agree, for the reasons given by the district court, no genuine issues of material fact existed and defendants were entitled to judgment. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

**AFFIRMED.** We **DENY** Grady's request to proceed without prepayment of the filing fees because he has failed to advance "a reasoned, nonfrivolous argument on the

law and facts in support of the issues raised on appeal." *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991).  Filing and docketing fees are due and payable to the Clerk of the District Court.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge