**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 28, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

REBECCA MEDINA,

        Plaintiff - Appellant,

v.

INCOME SUPPORT DIVISION,
STATE OF NEW MEXICO,

        Defendant - Appellee.

No. 04-2166

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D. Ct. No. CIV-03-0533 MCA/RLP)**

Michael E. Mozes, Law Offices of Michael E. Mozes, P.C., Albuquerque, New Mexico, appearing for Appellant.

Daniel Joseph Macke (Kevin M. Brown, with him on the brief), Brown & German, Albuquerque, New Mexico, appearing for Appellee.

Before **TACHA**, Chief Circuit Judge, **LUCERO**, and **McCONNELL**, Circuit Judges.

**TACHA**, Chief Circuit Judge.

Plaintiff-Appellant Rebecca Medina sued her former employer, Defendant-

Appellee Income Support Division, State of New Mexico ("ISD"), alleging

gender-based hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The District Court granted summary judgment in favor of ISD on both claims, reasoning that Ms. Medina was not discriminated against "because of sex" and that she had not suffered an adverse employment action or had not demonstrated that ISD's nondiscriminatory reason for taking such action was pretextual. Ms. Medina contests both issues on appeal. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Ms. Medina is a heterosexual woman who was employed by ISD from August 2001 until September 2002. During Ms. Medina's tenure at ISD, her supervisor was Debie Baca, who is a lesbian. ISD employed other lesbians besides Ms. Baca.

Beginning in January 2002, Ms. Medina began to experience unwelcome conduct from Ms. Baca. That month, Ms. Baca sent Ms. Medina an e-mail titled "Bitchdom." In March 2002, Ms. Baca sent Ms. Medina an e-mail depicting a woman in an aisle at K-Mart bending over in a skirt and exposing her genitals. The e-mail stated that if more women had engaged in similar behavior, K-Mart might not be in financial straits. After receiving the e-mail, Ms. Medina complained to Ms. Baca that it was offensive; Ms. Baca, however, simply

-2-

responded with laughter. The following May, Ms. Medina sought a promotion to the position of Clerk Supervisor Specialist. She interviewed for the position, and the interview panel gave her the second highest score of all applicants. Ms. Baca ultimately awarded the position to Maria Salinas, who received the highest score. Then, in July 2002, Ms. Baca and her partner, Evelyn Gallegos, sent Ms. Medina an "orgasm e-mail." Ms. Medina describes the e-mail as "consist[ing] of a 'female' box and a 'male' box which shakes the computer screen when hit—the 'female' box shook numerous times and the 'male' box once." The final incident occurred on July 31, 2002, when Ms. Baca was conducting a staff meeting about the prevention of workplace sexual harassment. During the meeting, Ms. Baca said, "[A]fter you have finished training, I do not want to hear any more sexual harassment complaints, only sexual advancements." Ms. Medina was offended by this comment.

On August 2, 2002, Ms. Medina wrote a nine-page letter to the Human Resources Department of the State of New Mexico, claiming that Ms. Baca had subjected her to a hostile work environment. The letter included detailed accounts of what Ms. Medina considered to be preferential treatment for lesbians at ISD as well as numerous instances of Ms. Baca's sexually-charged behavior. Mary Beth Pizzoli and Janna Garcia, Human Resources employees, investigated Ms. Medina's claim. Over the course of the investigation, forty-eight ISD

employees were interviewed. On August 30, the investigators drafted a written report concluding that a large majority of Ms. Medina's claims could not be substantiated.

During that July or August, Ms. Medina had applied for a position with another New Mexico state agency, the Commission on the Status of Women ("CSW"). On September 11, 2002, Ms. Medina was interviewed for and offered the position at CSW. She resigned from ISD and accepted the CSW position the following day. On September 20, the director of ISD gave Ms. Medina a warning letter for knowingly or maliciously bringing false claims to the Human Resources Department in violation of ISD's Code of Conduct and Sexual Harassment Policy. The warning was never placed in Ms. Medina's personnel file. Ms. Medina began working for CSW on September 27.

In May 2003, Ms. Medina brought suit against ISD under Title VII of the Civil Rights Act of 1964, alleging that she was subjected to a hostile work environment and retaliated against because of sex. The District Court dismissed both her hostile work environment and retaliation claims on summary judgment. As to the hostile work environment claim, it held that Ms. Medina had failed to demonstrate that she was discriminated against "because of sex." *See* 42 U.S.C. § 2000e-2(a)(1). The District Court also concluded that Ms. Medina had failed to make out a prima facie case of retaliation with respect to her allegations of

coworker hostility and the warning letter and that she also failed to demonstrate that ISD's nondiscriminatory reason for not promoting her was pretextual.

## II. DISCUSSION

A.  Standard of Review

We review the District Court's entry of summary judgment de novo, and we apply the same standards used by the District Court.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party.  *Byers*, 150 F.3d at 1274.

B.  Hostile Work Environment

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1). To establish the existence of a hostile work environment actionable under Title VII, a plaintiff must show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that

it altered the terms or conditions of her employment and created an abusive working environment. *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1096 (10th Cir. 2005). The District Court concluded that Ms. Medina failed to demonstrate that a reasonable jury could find that Ms. Baca harassed her because of her sex.

In *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998), the Supreme Court discussed three evidentiary routes under which a plaintiff in a same-sex sexual harassment suit might prove that she was discriminated against because of her sex. First, she can establish that her harasser's discriminatory conduct was motivated by sexual desire. *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1263 (10th Cir. 2005). One way to do this is to put forth evidence that her harasser is homosexual and that she proposed sexual activity with the plaintiff. *Id.* at 1265. Second, a plaintiff might prove that she was harassed because of her sex if she demonstrates that the harasser's conduct was motivated by hostility to the presence of that sex in the workplace. *Id.* at 1264. Finally, a plaintiff may produce comparative evidence showing that her harasser treated women and men differently in a mixed-sex work environment. *Id.*; *Chavez*, 396 F.3d at 1096.

These routes, however, are not exhaustive. The Third Circuit has held that a plaintiff may satisfy her evidentiary burden by showing that the harasser was

acting to punish the plaintiff's noncompliance with gender stereotypes. *Bibby v. Philadelphia Coca-Cola Bottling Co.*, 260 F.3d 257, 263–64 (3d Cir. 2001). This route is rooted in *Price Waterhouse v. Hopkins*, a case in which the Supreme Court reviewed the sex discrimination claim of a woman who had been denied partnership in an accounting firm at least in part on the basis that she was "macho," "overcompensated for being a woman," needed "a course in charm school," was "masculine," and was "a lady using foul language." 490 U.S. 228, 235 (1989), *modification by statute recognized in Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98–102 (2003) (considering the impact of 42 U.S.C. § 2000e-2(m) on mixed motive cases). In that case, a partner in the firm advised the plaintiff that if she wished to improve her chances of earning partnership, she should act more "femininely," wear make-up, do her hair, and wear jewelry. *Id.* A plurality of the Court agreed that "[i]n the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." *Id.* at 250.

Ms. Medina relies on *Bibby* and argues that Ms. Baca harassed her because of her failure to comport with gender stereotypes. Here, however, there is no evidence—and no claim—that Ms. Medina did not dress or behave like a stereotypical woman. Instead, Ms. Medina apparently argues that she was punished for not acting like a stereotypical woman *who worked at ISD*—which,

according to her, is a lesbian.

We construe Ms. Medina's argument as alleging she was discriminated against because she is a heterosexual. Title VII's protections, however, do not extend to harassment due to a person's sexuality. As the *Bibby* court pointed out, "Congress has repeatedly rejected legislation that would have extended Title VII to cover sexual orientation." *Bibby*, 260 F.3d at 261; *see also Simonton v. Runyon* 232 F.3d 33, 35–36 (2d Cir. 2000) ("Congress's refusal to expand the reach of Title VII is strong evidence of congressional intent in the face of consistent judicial decisions refusing to interpret "sex" to include sexual orientation."); *Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 143 (4th Cir. 1996) ("Title VII does not afford a cause of action for discrimination based upon sexual orientation."). Therefore, the District Court properly dismissed Ms. Medina's claim for hostile work environment because she failed to show that she was discriminated against because of sex.

C.   Retaliation

Title VII makes it an unlawful employment practice for an employer "to discriminate against any of [her] employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). In the absence of direct evidence, claims of retaliation are subject to the Supreme Court's burden-shifting framework established in *McDonnell*

-8-

*Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under that framework, a plaintiff must begin by putting on a prima facie case of retaliation. *See id.* at 802; *Dick*, 397 F.3d at 1267. The prima facie case encompasses three elements. First, plaintiff must show that she engaged in protected opposition to discrimination. *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993). This type of activity can range from filing formal charges to complaining informally to supervisors. *Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). Under the second prong of the prima facie case, a plaintiff must demonstrate that her employer took an adverse employment action against her subsequent to or after the protected activity. *Williams*, 983 F.2d at 181. The existence of an adverse employment action is determined on a case-to-case basis and does not include "a mere inconvenience or an alteration of job responsibilities." *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000) (internal quotations omitted). Instead, to constitute an adverse action, the employer's conduct must be "materially adverse" to the employee's job status. *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998). For example, conduct that effects "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" will be deemed an adverse employment action. *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032–33 (10th Cir. 2004) (internal quotations

omitted). Finally, under the third prong of the prima facie case, the plaintiff must establish a causal connection between the protected activity and the adverse action. *Williams*, 983 F.2d at 181.

If the plaintiff establishes her prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action. *Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003). Thereafter, if the defendant meets its burden, summary judgment against the plaintiff is warranted unless she shows that there is a genuine issue of fact as to whether the defendant's reason is pretextual. *Id.* The plaintiff meets her burden here if she demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in her employer's proffered reason such that "a reasonable factfinder could rationally find them unworthy of credence." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (internal quotations omitted).

In this case, Ms. Medina alleges that she was retaliated against in the form of coworker hostility, issuance of a warning letter, and the denial of the promotion to Clerk Supervisor Specialist because of her complaints to Ms. Baca and the Human Resources Department. Ms. Medina and ISD do not dispute that she meets the first prong of her prima facie case with respect to each alleged action. They do dispute the following issues: whether (1) the coworker hostility

is an adverse employment action; (2) the letter of reprimand is an adverse employment action; and (3) Ms. Medina has shown that ISD's nondiscriminatory reason for not promoting her is pretextual. We address these in turn.

1.    *Coworker Hostility*

Ms. Medina first makes vague assertions of coworker hostility. Coworker hostility or retaliatory harassment constitutes an adverse employment action only if it is sufficiently severe. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998). In her response to ISD's motion for summary judgment, however, Ms. Medina references coworker harassment only twice, stating that "the continuing hostility in the workplace constitute[s] [an] adverse employment action under the case law" and that her work environment was "hostile, cold, and harassing" following her complaints. Without alleging specific instances of coworker harassment or describing them in any detail, no reasonable jury could find that Ms. Medina has demonstrated that hostility toward her by coworkers constitutes an adverse employment action. Summary judgment on this issue was appropriate.

2.    *Warning Letter*

ISD issued Ms. Medina a warning letter for knowingly and maliciously filing false claims with the Human Resources Department. Disciplinary proceedings, such as warning letters and reprimands, can constitute an adverse

employment action. *See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998); *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996). A reprimand, however, will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment—for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities. *See Roberts*, 149 F.3d at 1104.

Here, while we share the District Court's concern "that ISD, whose policy apparently is to encourage the reporting of sexual harassment and other workplace misconduct, disciplined Medina for having made just such a report," we also agree that the warning letter at issue falls short of an adverse employment action. Ms. Medina had already been offered the job at CSW and resigned from ISD at the time the letter was issued. The letter was not placed in Ms. Medina's personnel file. Moreover, Ms. Medina has not demonstrated that CSW—or any subsequent employer, for that matter—has discovered or could discover the letter in the future. Therefore, we conclude that the warning letter could not be found to adversely affect the terms or conditions of Ms. Medina's employment. Thus, it is not an adverse employment action.

3. *Denial of Promotion*

Ms. Medina complained to Ms. Baca about the harassing K-Mart e-mail in

March 2002.  Five weeks later, Ms. Medina was denied a promotion to Clerk Supervisor Specialist.  We will assume for purposes of this appeal, then, that Ms. Medina has made out a prima facie case of retaliation.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (adverse employment action includes failing to promote); *Ramirez v. Oklahoma Dep't. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (concluding that a one and one-half month period between protected activity and adverse action may establish causation), *overruled on other grounds, Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1194–95 (10th Cir. 1998).  ISD justified its decision by stating that Ms. Salinas was more qualified than Ms. Medina.  Ms. Medina claims this justification is pretextual for two reasons.

First, she argues that it is untrue that Ms. Salinas was more qualified for the job.  In support of this contention, however, Ms. Medina relies only on Ms. Pizzoli's deposition statement that she did not know whether either Ms. Medina or Ms. Salinas had any computer experience.  This equivocal and irrelevant statement is not sufficient to raise a factual issue whether Ms. Salinas was not qualified for the position of Clerk Supervisor Specialist.  Moreover, Ms. Medina's argument is directly undermined by record evidence showing that Ms. Salinas was selected based on her having received the highest score of the interview panel based, in large part, on her twenty-eight years' experience in a similar position.

Second, Ms. Medina argues that ISD's reason for not promoting her is pretextual because of the closeness in time between her complaints and the adverse action. While we "have stated that close temporal proximity is a factor in showing pretext, [it] is not alone sufficient to defeat summary judgment." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) (citing *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000)). As stated above, Ms. Medina must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in ISD's proffered reason for its decision not to promote Ms. Medina such that "a reasonable factfinder could rationally find them unworthy of credence." *Anderson*, 181 F.3d at 1179 (internal quotations omitted). No reasonable jury could conclude that a five-week span of time between Ms. Medina's complaint to Ms. Baca and her subsequent failure to be promoted, without more, meets this standard. As such, Ms. Medina has failed to meet her burden under the *McDonnell Douglas* framework and summary judgment is warranted.

### III. CONCLUSION

Because Ms. Medina has failed to raise a genuine issue of material fact as to whether she was discriminated against because of her sex, we AFFIRM the District Court's entry of summary judgment against Ms. Medina's hostile work environment claim. We also AFFIRM the entry of summary judgment against Ms.

Medina's claims of retaliation because she did not demonstrate that coworker hostility or the warning letter were adverse employment actions and because she failed to show that ISD's reason for not promoting her were pretextual.