E. GRADY JOLLY, Circuit Judge,
dissenting, joined by JONES, SMITH, DeMOSS, CLEMENT, and OWEN, Circuit Judges.
Let me first acknowledge that the facts and language in this case, which occurred in an all-male workforce on an ironworker construction site, are not for tender ears. The vulgarities can cast turmoil in a strong stomach, but that does not mean that the laws of the United States have been violated, and it does not require Title VII and the EEOC to serve as federal enforcer of clean talk in a single sex workforce.
The majority notes that the EEOC “may rely on evidence that Wolfe viewed Woods as insufficiently masculine to prove its Title VII claim.” That may be true, but the fatal vacuum in the majority’s reasoning is that the EEOC, in fact, produced no evidence that Wolfe believed Woods was not a “manly man.” This lack of regard for the very foundational requirement that some reason for alleged sexual discrimination be presented allows this alleged same-sex stereotyping case to untether Title VII from its current mooring in sexual discrimination. Its application now veers from the realm of valid action against actual sexual harassment to a new world, in which Title VII prevents not only sexual harassment, but also myriad other undesirable conduct — regardless of whether that conduct, in fact, even resembles sexual discrimination. Accordingly, I respectfully dissent.
I.
While the Supreme Court has made clear that same-sex sexual harassment claims are cognizable under Title VII, it has further acknowledged that proving *471 such claims is more demanding and cumbersome than proving traditional opposite-sex sexual harassment claims. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Thus, in Oncale the Court recognized that there must be some identifiable basis for inferring that an alleged harasser is intending to discriminate against a victim on the basis of his or her sex in same-sex discrimination cases. Id. For instance, the Court observed that same-sex harassment claims could be viable when there is credible evidence a harasser is homosexual, or when it has been made clear “the harasser is motivated by general hostility to the presence of [members of his or her same sex] in the workplace,” or when there is “direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.” Id. at 80, 118 S.Ct. 998. Each of these examples is a mechanism for ascertaining an intent to discriminate based upon sex. It is compelling, in the first instance, that none of these factors are present in this case.
But regardless of whether there are other methods for making this determination, the EEOC proffered no basis for inferring discriminatory intent based upon Woods’s sex — subjective or objective. Rather, it moves quickly from asserting that other evidentiary paths are available to a conclusion that, because Wolfe targeted certain words and acts at Woods, Wolfe’s mal intent to sexually discriminate against Woods was proved. This line of reasoning completely abdicates the burden prescribed to plaintiffs in same-sex sexual discrimination eases by the Supreme Court in Oncale — which is not simply to assert the basis for the inference of harassment based upon sex, but to further prove the truth of that assertion. The Oncale Court specifically held “[t]he same chain of inference” present in male-female sexual harassment claims — i.e., the assumption that certain “proposals would not have been made to someone of the same sex”— is available in same-sex sexual harassment cases only if an additional step is taken to illuminate the basis of the inference. Id. at 80, 118 S.Ct. 998. Unlike opposite sex Title VII claims, therefore, in same-sex suits a plaintiff must elucidate and prove the premise of his assertion that the harassment is because of sex — it is not assumed automatically.
In this case, the EEOC’s proffered premise is that Wolfe subjectively believed Woods was somehow not “manly.” But the only evidence the EEOC provided supporting this premise related to Woods’s use of Wet Ones; Wolfe himself testified that, aside from this, he emphatically did not believe or consider Woods feminine, but, instead, Woods was “an iron worker just like the rest of [t]hem.” And Woods himself offered no other explanation as to why he believed Wolfe was sexually harassing him, as opposed to simply taunting him as Wolfe did every other iron worker on the all-male job site. Indeed, Woods never stated that he felt Wolfe called him names and behaved crudely with him because Wolfe believed Woods did not conform to gender norms.[1] Thus, even the plaintiff did not contend his alleged haras *472 ser harassed him because he did not act “manly.”
Moreover, there is simply no evidence, garnered from Woods, Wolfe, or any of the other men who testified, that Woods failed objectively to conform to traditional “male gender norms.” The majority notes that “[w]e do not require a plaintiff to prop up his employer’s subjective discriminatory animus by proving that it was rooted in some objective truth.” In other cases this assertion may be true. When, however, the subjective discriminatory animus of the employer is itself in question, objective evidence may be necessary to demonstrate the presence or absence of such an intent. See, e.g., Medina v. Income Support Div., New Mexico, 413 F.3d 1131, 1135 (10th Cir.2005) (finding no sexual harassment based upon gender stereotyping when “there [wa]s no evidence ... that [the plaintiff] did not dress or behave like a stereotypical woman”). If a victim possesses no characteristics, exhibited or unexhibited, of nonconformance with gender stereotypes, then there would appear to be no basis for an alleged harasser to possess a subjective intent to discriminate against that victim because of nonconfor-mance. And in cases such as this, where the alleged harasser does not consider the victim to be unmanly—and even the victim does not testify otherwise — and the alleged harasser further treats the victim with the same or similar disrespect with which he treats his other coworkers, we are left without anything tethering a claim of discrimination because of sex to the realities of the workplace. To reach any other conclusion is to say that when a supervisor persists in referring to an unquestionably manly man as a sissy, the laws of the United States have been broken, requiring the full force of the United States executive and judiciary to descend upon some small business and extract hundreds of thousands of dollars in fees and damages from its till. Such a result is simply at odds with Title VII, which is only violated in cases of discrimination based upon the victim’s sex.[2]
The majority isolates from its context the language and conduct of Wolfe, and seizes upon it as reflecting a subjective intent to discriminate on the basis of Woods’ sex, saying that the harassing out-of-context words and conduct, “lend themselves to a reasonable inference on the part of the jury that Wolfe viewed Woods as insufficiently masculine.” That is to say, the majority relies on the harassment, in and of itself, as a substitute for actual evidence reflecting a subjective intent of Wolfe to engage in sex discrimination against Woods — completely ignoring the all male iron worker environment where it occurred. The majority thus engages in a distraction from the proper legal analysis by treating this case as if it were sexual harassment between male and female when the inference of sex discrimination may be presumed by words and conduct.[3] In same-sex sexual harassment cases, particularly in an all-male workforce where *473 rowdy language is commonplace, the reason for harassment (i.e. whether it is because of sex) must be distilled and proved by the plaintiff, a showing which the majority has utterly failed in making. The majority should call it for what it is: immature and gutter behavior between and among male coworkers. And then drop it.
It is especially inappropriate in this case to assume that Wolfe’s use of words like “pu — y” and “fa — ot” necessarily connoted a desire to sexually discriminate, because all of the evidence indicates Wolfe used these and similar words towards the other men on site on a daily basis. In fact, the record is replete with testimony that Wolfe was vulgar with everyone on site, aiming derogatory terms with sexual innuendoes at each of them, exposing himself to them, and pretending to “hump” several men on site. And while Wolfe was unquestionably the crudest ironworker on the site, the evidence indicates all the men were generally more vulgar here than they would have been in a mixed-sex society, and that such sexually-charged words were bandied about regularly. The EEOC has identified no basis for presuming that Wolfe directed these words and actions at Woods, particularly, or at any of the other ironworkers for that matter, out of a subjective intent to sexually discriminate against him or them. This failure should end the discussion and the case.
Indeed, the ease the majority cites for the proposition that words alone demonstrate Wolfe’s subjective intent itself belies the weakness of its application here. In Nichols v. Azteca Restaurant Enterprises, Inc., 256 F.3d 864 (9th Cir.2001), the court found “systematic abuse directed at Sanchez reflected a belief that Sanchez did not act as a man should act,” when several of Sanchez’s coworkers at the restaurant attacked him — and only him — for walking and carrying his tray “like a woman,” ridiculed him for not having sexual intercourse with a waitress who was his friend, frequently referred to him as “she” or “her,” and directed vulgar names at him that were “cast in female terms.” Id. at 874. The court then concluded that all of this verbal abuse was closely linked to gender — it did not rely solely upon the names Sanchez’s coworkers called him.
Here, quite to the contrary. The record shows, as we have pointed out, that Wolfe was vulgar and used such names with all the men on site, and the EEOC points only to Woods’s use of Wet Ones as the basis for presuming he “did not act as a man should act.” The patent weakness of the EEOC’s attempt to use this singular example of Woods’s as the premise for a lawsuit alleging violations of the laws of the United States — and as the sole support for a several hundred thousand dollar verdict— is underscored by the fact that no other circuit has found a Title VII violation on such piddling evidence. As just noted, the Ninth Circuit reached a conclusion that same-sex sexual harassment on the basis of gender stereotypes occurred in the face of far more compelling facts — it is difficult to dispute that a man’s coworkers at a restaurant do not think he is “manly” when they single him out, tell him explicitly that he “earrfies] his tray ‘like a woman,’ ” mock his lack of sexual activity with women, and continuously call him “she” or “her.” Id. And, to be sure, the Tenth Circuit rejected a claim of sexual discrimination in a setting similar to the one now before us. Medina, 413 F.3d 1131. In Medina, the court found that the plaintiff failed to demonstrate she was sexually discriminated against because of her failure to comport with gender stereotypes when “there [wa]s no evidence — and no claim— that [the plaintiff] did not dress or behave like a stereotypical woman.” Id. at 1135.
*474 Similarly here, there is no evidence Woods did not behave like a stereotypical man — and Woods never claimed that he felt Wolfe discriminated against him because Wolfe believed that he was not manly. The EEOC has demonstrated nothing more than: Wolfe asserted a single act of Woods’s that was not manly; and, secondly, that Wolfe was cruder to Woods than he was to most other men on site; but it has in no way demonstrated that this additional crudeness derived from a subjective intent to sexually discriminate against Woods anymore than it did Wolfe’s other “victims.” This superficial demonstration, when placed in the context of this workplace, may suggest that Wolfe did not like Woods; it utterly fails to speak to the reason for such dislike. See, e.g., Galloway, 78 F.3d at 1168 (finding, in context, that “there would not be an automatic inference from his use of the word ‘bitch’ that his abuse of a woman was motivated by her gender rather than by a personal dislike unrelated to gender”).
Furthermore, that the record makes clear Wolfe engaged in materially similar, vulgar conduct with most every other employee on the work site means — on the very same evidence supplied in this case— each of these men can establish a successful claim for sexual harassment. That is, unless there is some motive of Wolfe’s peculiar to Woods. But if such a motive existed, the EEOC has neither claimed nor demonstrated it. Nor does the majority illuminate what evidence indicates Wolfe’s intent toward Woods was any different. Without evidence of this motive, there is nothing supporting the notion that Wolfe sexually discriminated against Woods alone, as opposed to each and every man with whom he crudely interacted.
Finally, the majority opinion takes no account of the overall social context in which this case occurred. It is important to the case, and to any conclusion of sexual harassment, that these actions occurred in an all-male environment and on the construction site. This setting is customarily vulgar and crude. And the Supreme Court has clearly and repeatedly held that “an appropriate sensitivity to social context,” and a recognition that the same actions taken on “the field” versus in the office are importantly different, are considerations preventing Title VII from mutating into an all-encompassing code of civility. Oncale, 523 U.S. at 81, 118 S.Ct. 998. In fact, the Court explicitly found that “[t]he real social impact of workplace behavior depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.” Id. at 81-82, 118 S.Ct. 998. Despite this clear admonition, the majority quotes extensively from the record and recounts various actions in which Wolfe engaged without ever taking account of the environment surrounding these events, or explaining how behavior occurring on and characteristic of the construction site can constitute sexual harassment.
II.
The majority upholds a plaintiffs claim of same-sex sexual harassment based upon gender stereotyping without any evidence that gender stereotyping actually occurred. The implication of this holding is that certain vulgarities and crude behavior-including those occurring in an all-male environment on the construction site — necessarily constitute illegal sexual harassment in violation of the laws of the United States, even when no reason exists for presuming these words and acts are motivated by a desire to discriminate based upon sex. Finding this holding to be a gross extension of what were once *475 sensible limitations upon Title VII liability, I respectfully dissent.[4]

. Woods testified he felt harassed by Wolfe, but never offered an explanation as to why he felt this was sexual discrimination. At one point during his testimony, Woods's lawyer asked him in what way he felt Wolfe treated him differently than Wolfe treated others on site, and Woods's answer was that "he treated them more like you’re supposed to treat a grown man.” USCA5 at 1746. But this suggests only that Wolfe’s conduct was itself adult-to-juvenile conduct. Nowhere in his testimony did Woods state he felt Wolfe harassed him because Wolfe thought he did not act "manly.”

. Thus, to reiterate, reference to the objective facts of this case is relevant simply to show that there was no basis from which a jury could have drawn a conclusion of intentional discrimination based upon same-sex stereotyping.

. Even in opposite-sex cases, this assumption is not always valid — context is immensely important in Title VII cases. For example, the Seventh Circuit found the term “ ‘sick bitch' — and ... the other verbal abuse, and the obscene gesture that [the defendant] directed toward [the plaintiff]—was, in context, not a sex- or gender-related term.” Galloway v. General Motors Serv. Parts Operations, 78 F.3d 1164, 1167 (7th Cir.1996), abrogated in part on other grounds, Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

. As a final note, I would add that the majority is also wrong regarding the Ellerth/Faragher affirmative defense and the issue of injunc-tive relief. With respect to the affirmative defense, Woods specifically admitted that he knew he could complain about Wolfe’s behavior, but that he never did so until the occasion when management immediately responded to his complaint by reassigning him to another work site. USCA5 at 1788-89. Furthermore, the injunctive relief awarded by the district court was totally inappropriate. This case involved one supervisor and one complaint by one individual — who, as just stated, failed to make the company aware of any harassment until after he was taken off the site, and who, along with his alleged harasser, is no longer with the company. — and this company has had no other meritorious complaint of sexual
harassment in its forty-year history. The district court’s imposition of extensive and impractical remedies in this case is thus an overreaction to the conduct of a single supervisor, now discharged, whose conduct lasted a few months in the context of forty years without a single incident.