FILED
United States Court of Appeals
Tenth Circuit

January 9, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DENNY BENTON,

      Plaintiff-Appellant,

v.

TOWN OF SOUTH FORK AND
POLICE DEPARTMENT, individually;
RANDY HERRERA, former police
chief; JAMES CHAVEZ, current police
chief,

      Defendants-Appellees,

AT TIMES ACTING TOWN
MANAGER AND CLERK SHARON
FAIRCHILD; FORMER TOWN
MANAGER TODD WRIGHT; FORMER
MAYOR LARRY HEERSINK;
COLORADO STATE PATROL
DISPATCH ALAMOSA, COLORADO;
POLICE OFFICER PAM STEWART;
TOWN MANAGER BILL MATTHEWS;
TRUSTEE GROVER HAWETHORNE,

      Defendants.

No. 13-1179
(D.C. No. 1:12-CV-00336-CMA-KMT)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **BACHARACH**, Circuit Judge.

Denny Benton appeals pro se from the district court's judgment dismissing his amended complaint for failure to state a claim on which relief could be granted. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.      Background

The following facts are gleaned from Mr. Benton's pro se amended complaint, which we liberally construe.  *See Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1024 (10th Cir. 2012).

### A.      Mr. Benton's Employment with the Town of South Fork

Mr. Benton was a police officer with the Town of South Fork, Colorado (Town or South Fork), until he resigned on September 23, 2009.  Shortly before that date, the Town had hired Randy Herrera as the new Chief of Police.  Mr. Benton says that he faced a hostile work environment as soon as Chief Herrera arrived.  The Chief hardly spoke to him, left him out of the loop on pending cases, told him that a man his age should be looking for another career, and threatened to ruin his career.  He also treated Mr. Benton differently than two Hispanic police officers.  The Chief assigned these officers extra work hours not offered to Mr. Benton and promoted Officer Chavez even though Mr. Benton had more seniority.

- 2 -

On September 8, 2009, Chief Herrera notified Mr. Benton that he was investigating a traffic stop that Mr. Benton had conducted fifteen months earlier (the Zelenok traffic stop). Mr. Benton protested that he had not received any write-up when the previous Chief of Police reviewed that traffic stop. Unbeknownst to Mr. Benton, Mr. Zelenok had filed a civil rights action against the Town and Mr. Benton.

Mr. Benton tried to resign from his position with South Fork on September 11, but Mayor Heersink and Town Manager Wright talked him out of it. When Mr. Benton met with Chief Herrera on September 13 regarding the internal investigation into the Zelenok traffic stop, the Chief told him that two Town Trustees wanted him fired. After that meeting, Chief Herrera continued to harass Mr. Benton regarding the Zelenok traffic stop and also threatened him with future write-ups. Mr. Benton tried to resign from his position again on September 13, but Mayor Heersink and Town Manager Wright talked him out of it once more. On each of the days that Mr. Benton attempted to resign, he reported for his work shift less than one hour late.

On September 22, 2009, Mr. Benton met with Chief Herrera and Town Manager Wright. The Chief told Mr. Benton they were going to try to have him fired at the next Town Board meeting. They also presented him with a write-up dated September 21 that Mr. Benton claims was false. Among other things, it said that Mr. Benton had been on leave without excuse on September 11 and 13. Mr. Benton

protested, indicating that he had reported late for work on those days because he had been speaking with Chief Herrera's supervisors about his intent to resign. According to Mr. Benton, the write-up was also false because Town policy only required that action if an employee has had three tardies. Chief Herrera also informed Mr. Benton that he was opening an investigation regarding another traffic stop (the Elgin traffic stop). He told Mr. Benton if he did not resign, that investigation would go in his personnel file. But Chief Herrera and Town Manager Wright then promised Mr. Benton that if he resigned, the existing false write-ups and the additional, threatened false write-ups would not go in his personnel file.

That evening Mr. Benton prepared a written grievance against Chief Herrera and the Town, which he intended to present to the Town Trustees. He had also decided to resign from his position with the Town because he could not continue to work under Chief Herrera. He intended to seek another police officer job, and he had already started the application process with the City of Delta, Colorado. He claims that his decision to resign was nonetheless made under duress due to the hostile work environment at South Fork and the Chief's threats to ruin his career.

On September 23, Mr. Benton submitted his resignation at the Town Hall. During his exit interview, he provided Mayor Heersink with his written grievance, but the Mayor did not agree to submit it to the Town Board of Trustees. Instead, the Mayor stated it would go in Mr. Benton's personnel file and would make him look like a whiner. As Mr. Benton was leaving the Town Hall, Chief Herrera told him that

- 4 -

the investigation regarding the Zelenok traffic stop no longer existed. Mr. Benton alleges that Town Manager Wright directed the Chief to "squash" that investigation.

### B. Events Following Mr. Benton's Resignation

Mr. Benton applied for a position with the Leadville, Colorado, police department. He tested for that position in October 2009, but he was not offered a job. Delta also showed interest in Mr. Benton's job application, and in late November 2009 he completed and passed the testing for a position. He was told that Delta was doing a background check, and he signed a release allowing South Fork to review his personnel file. But after Delta reviewed his file, Mr. Benton was not offered the job. He received a letter from Delta dated January 27, 2010, informing him that he had not been selected for hire and that Delta was continuing its search to fill the position.

In late October or early November 2009, Mr. Benton first learned that he was named as a defendant in the *Zelenok* litigation, although he was not served with the complaint until December 2009. On April 30, 2010, his defense counsel in that case informed Mr. Benton that he had received from Chief Herrera a write-up prepared by Officer Chavez regarding the Elgin traffic stop. Mr. Benton was surprised because, while he had been threatened with false write-ups during his September 22, 2009, meeting with the Chief, he had never seen or signed this write-up.

Mr. Benton learned that Chief Herrera would be leaving his job with South Fork in late December 2010. In early January 2011, he requested a copy of his personnel file. When he reviewed his file at the Town Hall on January 14, 2011, he

discovered that former Chief Herrera and new Chief Chavez had put three false write-ups in his file. His immediate reaction was, "[N]o wonder I can't get a job you guys can't do this to me." R., Vol. 1 at 62.

Mr. Benton did not initially realize the legal importance of the false write-ups. He finally sent a written claim to the Town on July 14, 2011. On July 18, he filed a charge of discrimination against the Town with the Colorado Civil Rights Division and the EEOC (EEOC charge). He stated:

> At the time of my separation from [South Fork], I informed the town Mayor about my concerns of discrimination toward me based on age and national origin/ancestry. . . . On or about January 17, 2011, I discovered that the Respondent was providing false information to prospective employers therefore[] impeding my gainful employment. . . . It is my belief that I was discriminated against in retaliation for engaging in protected activity.

*Id.* at 72.

In December 2011, Mr. Benton again asked to view and obtain copies of his personnel file and other records from South Fork. When he went to the Town Hall on January 17, 2012, Chief Chavez said he was not allowed to view the Zelenok file and refused to provide copies of the Town's policies and procedures. Town Manager Matthew ordered Mr. Benton to leave, and he and Chief Chavez threatened to arrest him. Chief Chavez pushed Mr. Benton as he was moving toward the door.

Around the same time, Mr. Benton also submitted a written request to the Colorado State Patrol Dispatch in Alamosa, Colorado, for copies of records related to the Zelenok and Elgin traffic stops. Officer Stewart provided Mr. Benton with some,

but not all, of the information he sought. Mr. Benton thought Officer Stewart was trying to tip him off that someone was keeping the information from him. Officer Stewart ultimately told Mr. Benton she would send him the records, but he never received them.

### C.     Mr. Benton's Lawsuit

Mr. Benton filed a pro se complaint against defendants on February 8, 2012, which he later amended. All but one defendant moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(1) and (6).[1] Defendants also filed motions to stay the proceedings pending the court's ruling on the motions to dismiss. The district court granted the motions to stay and referred the motions to dismiss to a magistrate judge, who issued a report and recommendation (R&R). The magistrate judge construed the amended complaint as asserting the following claims: (1) retaliation against Mr. Benton based on his being named as a defendant in the *Zelenok* lawsuit, in violation of the Fourteenth Amendment; (2) age discrimination in violation of the Age Discrimination in Employment Act (ADEA); (3) race discrimination in violation of Title VII; (4) failure to release State Patrol records; and (5) state-law tort and breach-of-contract claims.

The R&R construed Mr. Benton's Fourteenth Amendment claim as an attempt to allege retaliation based on his exercise of his First Amendment right of access to

---

[1]     Town Manager Matthews moved to quash the service that the Town Attorney had accepted on his behalf.

the courts. It recommended dismissal of this claim because Mr. Benton failed to allege any relevant protected activity. The magistrate judge determined that Mr. Benton's Title VII and ADEA claims were all time-barred because (1) he failed to file his charge of discrimination within 300 days of September 23, 2009—the day that he resigned his employment with South Fork, and (2) he failed to demonstrate grounds supporting equitable tolling or estoppel. The magistrate judge also recommended dismissal of Mr. Benton's claim regarding the State Patrol's failure to release records. Finally, the magistrate judge recommended against exercising jurisdiction over Mr. Benton's remaining state law claims.

Mr. Benton retained counsel, who filed objections to the R&R. His objections raised only three issues: (1) that the magistrate judge failed to consider three claims Mr. Benton had filed, namely supervisory harassment, retaliation, and constructive discharge; (2) that Mr. Benton had alleged protected activity in support of his retaliation claims, specifically his complaints of discrimination to Mayor Heersink in September 2009; and (3) that Mr. Benton's claims were not untimely under the doctrines of equitable tolling and estoppel. Mr. Benton's counsel also filed a Notice of Voluntary Dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i), dismissing without prejudice Mr. Benton's claims against most of the defendants. After noting that the only remaining defendants were the Town, its police department, Chief Herrera, and Officer Chavez, the court reviewed the R&R de novo and adopted it.

## II. Standards of Review

"We review de novo the dismissal of an action under Rule 12(b)(6) based on the statute of limitations." *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010). "We review the district court's refusal to apply equitable tolling for an abuse of discretion." *Id.* "We [also] review for an abuse of discretion the district court's refusal to hold an evidentiary hearing on equitable relief." *Davoll v. Webb*, 194 F.3d 1116, 1139-40 (10th Cir. 1999).

Although we liberally construe Mr. Benton's pro se amended complaint, we do not act as his advocate, we rely on his own statement of his causes of action, and we will not rewrite his complaint to include claims he failed to present. *See Firstenberg*, 696 F.3d at 1024. We also liberally construe Mr. Benton's pro se appellate filings. *See de Silva v. Pitts*, 481 F.3d 1279, 1283 n.4 (10th Cir. 2007).

## III. Discussion

Mr. Benton primarily challenges the district court's denial of equitable tolling and estoppel to extend the deadline to file his EEOC charge. We first address his contentions of error in several other determinations by the district court.

### A. The District Court's Failure to Grant Default Judgments

Mr. Benton first claims that, because none of the defendants filed timely responses to his amended complaint, the district court erred by not granting default judgments against them. Mr. Benton appears to be confused by the district court clerk's certificate of service dated May 8, 2012, which indicated only that the clerk

- 9 -

had mailed service-of-process forms to the U.S. Marshal's Service for effecting service upon the defendants.[2]  After the defendants were served, they filed timely responses, either by the original deadline or after being granted an extension of time. Benton has not shown any basis for the district court to grant default judgments.

**B.      The District Court's Failure to Schedule a Discovery Conference**

Mr. Benton also complains that the district court failed to schedule a discovery conference under Fed. R. Civ. P. 26(f).  But the court had granted the defendants' motions to stay the proceedings pending its determination of the motions to dismiss. Mr. Benton fails to show that the district court abused its discretion in granting the motions to stay.  *See United States v. One Parcel of Real Property*, 128 F.3d 1386, 1397 (10th Cir. 1997) (holding district court did not abuse its discretion in refusing to allow requested discovery).

**C.      The District Court's Failure to Set Aside Mr. Benton's Voluntary Dismissal of Certain Defendants**

Mr. Benton next contends that the district court erred in failing to set aside his voluntary dismissal of his claims against defendants Fairchild, Wright, Heersink, Matthews, Hawethorne, Stewart, and the Colorado State Patrol Dispatch Alamosa, Colorado.  After the district court entered its final judgment, Mr. Benton filed a pro se motion arguing that his counsel had filed the Notice of Voluntary Dismissal

---

[2]      This certificate of service and the returns of service regarding the defendants were not included in the record on appeal forwarded by the district court in this case. But we take judicial notice of these documents on the district court's docket.  *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

without his knowledge or consent. The district court denied the motion on the ground that it would not consider Mr. Benton's pro se motion when his counsel had not withdrawn from representing him. *See* D.C.COLO.LCivR 11.1(a) (eff. Dec. 1, 2012) (providing that "[o]nly pro se individual parties and members of this court's bar may appear or sign pleadings, motions, or other papers."). Mr. Benton identifies no error in the district court's disposition of his motion.

### D. The District Court's Failure to Consider Claims Asserted by Mr. Benton

Mr. Benton also argues that the district court misread his amended complaint and failed to consider several of the claims that he asserted. In his objections to the R&R, Mr. Benton argued that the magistrate judge did not address his claims asserting supervisory harassment, retaliation, and constructive discharge. The district court rejected this assertion, noting that the magistrate judge had explicitly considered Mr. Benton's retaliation claim. The court further held that Mr. Benton's bald assertion that he had "filed" claims for supervisory harassment and constructive discharge was insufficient to avoid dismissal when he failed to set forth the legal framework for these claims or develop any argument as to why the facts he alleged would plausibly entitle him to relief.

As to these latter two claims, Mr. Benton's appeal argument lacks the same factual and legal support. Moreover, the district court's analysis of the timeliness of his age and race discrimination claims applies as well to his claims of supervisory harassment and constructive discharge. But we agree with Mr. Benton that the

- 11 -

district court failed to address his Title VII and ADEA retaliation claims. However, as explained, *infra*, we decline to remand for consideration of these claims because his retaliation claims are also untimely.

### E.    Mr. Benton's Contention that his Claims are Timely Under the Doctrines of Equitable Tolling and Equitable Estoppel

Mr. Benton's final contention is that his Title VII and ADEA claims are not time-barred because the deadline for filing his discrimination charge was extended under the doctrines of equitable tolling and equitable estoppel. He also maintains that the district court should have held an evidentiary hearing on these issues. "While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). Therefore, a statute of limitations question may be appropriately resolved on a motion to dismiss. *Id.* We agree with the district court that, based on Mr. Benton's allegations in his amended complaint, neither of these equitable doctrines applies. We also conclude that the district court did not abuse its discretion in denying Mr. Benton's request for an evidentiary hearing.

### 1. Timeframe for Filing an EEOC Charge

"In states with a state agency that has authority over employment discrimination claims, including [Colorado[3]], employees have up to 300 days to file an EEOC charge if they first file a charge with the state agency. A claim not filed within these statutory limits is time barred." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 628 (10th Cir. 2012) (citing 42 U.S.C. § 2000e-5(e)(1) (Title VII) and 29 U.S.C. §626(d) (ADEA)) (citation omitted). Compliance with the 300-day filing requirement "is a condition precedent to suit that functions like a statute of limitations and is subject to waiver, estoppel, and equitable tolling." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1150 (10th Cir. 2008) (internal quotation mark omitted); *see also Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1226 n.13 (10th Cir. 2006) (noting equitable tolling and estoppel may apply to deadlines applicable to ADEA claims), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

### 2. Grounds for Applying Equitable Tolling and Equitable Estoppel

Equitable tolling "is appropriate only where the circumstances of the case rise to the level of active deception . . . where a plaintiff is lulled into inaction by [his] past employer, state or federal agencies, or the courts." *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994) (internal quotation marks omitted). Equitable

---

[3] *See* 29 C.F.R. § 1601.80 (identifying the Colorado Civil Rights Division as such a state agency).

tolling will not apply "unless an employee's failure to timely file results from either a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Id.* (internal quotation marks omitted). Similarly, "it is generally accepted that when an employer misleads an employee regarding a cause of action, equitable estoppel may be invoked." *Donovan v. Hahner, Foreman & Harness, Inc.*, 736 F.2d 1421, 1427 (10th Cir. 1984). "Courts may evaluate whether it would be proper to apply such doctrines, although they are to be applied sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

### 3. The District Court's Determinations Regarding Accrual of Mr. Benton's Claims and Application of Equitable Tolling and Estoppel

The magistrate judge concluded that Mr. Benton's Title VII and ADEA claims all accrued no later than the date of his resignation from South Fork on September 23, 2009; therefore, his discrimination charge filed on July 18, 2011, was untimely. The magistrate judge further found that Mr. Benton had not established any grounds supporting equitable tolling or estoppel. In his objections to the R&R, Mr. Benton contended that equitable tolling applied because defendants had withheld his South Fork personnel file, making it difficult for him to find the documents necessary to bring his claim. He argued that equitable estoppel also applied because defendants misled him to believe that his personnel file would not be tarnished.

The district court rejected these contentions and also denied Mr. Benton's request for an evidentiary hearing on the issues of equitable tolling and estoppel. We agree with the district court that, to the extent Mr. Benton's Title VII and ADEA claims had accrued as of his date of resignation, he has not alleged any active deception by defendants that delayed the filing of his discrimination charge, nor does he claim that defendants misled him regarding these causes of action. His allegations show that he was fully aware of the bases for his race- and age-discrimination claims (and his claims of supervisory harassment and constructive discharge) at the time he resigned his employment. And he has not demonstrated that, by withholding the contents of his personnel file, defendants in any way lulled him into inaction, or that defendants' promise of an untarnished personnel file misled him in any way regarding those claims.

### 4. Timeliness of Mr. Benton's Title VII and ADEA Retaliation Claims

The district court erred in applying the same analysis to Mr. Benton's retaliation claims. First, the court construed those claims too narrowly. The magistrate judge concluded that he only alleged retaliation by defendants related to Mr. Benton being named as a defendant in the *Zelenok* case. But Mr. Benton objected to that characterization of his claims, arguing that the R&R ignored his allegations of protected activity based on his complaints to Chief Herrera's supervisor about discrimination. "Title VII makes it an unlawful employment practice for an employer 'to discriminate against any of [its] employees . . . because

- 15 -

[the employee] has opposed any practice made an unlawful employment practice by this subchapter.'" *Medina v. Income Support Div.*, 413 F.3d 1131, 1135 (10th Cir. 2005) (quoting 42 U.S.C. § 2000e-3(a)); *see also* 29 U.S.C. § 623(d) (providing for anti-retaliation claim under ADEA). And such "protected opposition to discrimination" includes "complaining informally to supervisors." *Medina*, 413 F.3d at 1135-36. As to defendants' alleged retaliation, Mr. Benson claims that Chief Herrera and Officer Chavez put false write-ups in his personnel file. In his EEOC charge, which he attached to his amended complaint, Mr. Benton claimed that defendants provided false information to prospective employers. He stated, "It is my belief that I was discriminated against in retaliation for engaging in protected activity." R., Vol. 1 at 72. Despite Mr. Benton's objection and the allegations of protected activity and retaliation in his amended complaint, the district court did not alter the magistrate judge's narrow construction of his retaliation claims.

The district court also erred in adopting the magistrate judge's determination that *all* of Mr. Benton's Title VII and ADEA claims accrued on or before his date of resignation "because, thereafter, the Town of South Fork was no longer [his] employer." R., Vol. 1 at 950. Contrary to the district court's reasoning, "Title VII permits former employees to bring . . . retaliation actions against their former employers." *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 339-40, 346 (1997) (holding former employee could bring claim under § 2000e-3(a) alleging that former employer gave

out a negative employment reference in retaliation for his having filed an EEOC charge); *Passer v. Am. Chem. Soc'y*, 935 F.2d 322, 330-31 (D.C. Cir. 1991) (permitting former employees to bring claims under anti-retaliation provision in ADEA "as long as the alleged discrimination is related to or arises out of the employment relationship" (internal quotation mark omitted)).  Mr. Benton's amended complaint alleges that the retaliation occurred after his resignation from South Fork.  Therefore, not *all* of his Title VII and ADEA claims had accrued at that time.

### a.    Accrual of Mr. Benton's Retaliation Claims

"[E]ach retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice [and Mr. Benton] can only file a charge to cover discrete acts that occurred within [300 days of his filing]."  *Morgan*, 536 U.S. at 114 (internal quotation marks omitted).  In the employment context,

> a claim accrues when the disputed employment practice . . . is first announced to the plaintiff.  Sometimes, of course, an adverse employment decision isn't announced and the employee doesn't learn of it until much later—and in those circumstances courts revert to asking when the plaintiff did or a reasonable employee would have known of the employer's decision.  But in all events, and consistent with the general federal rule, an employee who discovers, or should have discovered, the *injury* (the adverse employment decision) need not be aware of the unlawful *discriminatory intent* behind that act for the limitations clock to start ticking.

*Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011) (citations omitted).  Here, defendants did not "announce" their decision to put false write-ups in Mr. Benton's South Fork personnel file and provide that false information to prospective employers.  He asserts that he had no knowledge of defendants'

- 17 -

retaliation until he reviewed his personnel file on January 14, 2011. But his allegations show that he discovered or should have discovered his injury before that date.

Mr. Benton's allegations indicate that, before he took steps to review his South Fork personnel file on January 14, 2011, he had deduced that Chief Herrera was ruining his name and preventing him from obtaining employment. R., Vol. 1 at 62. He does not specify when he reached that conclusion. But he alleges that he applied for a job with the Town of Delta in the fall of 2009 and passed the testing for that position. He knew that Delta's next step was a background check and that Delta had reviewed his South Fork personnel file. He learned in January 2010 that Delta would not hire him, and he specifically alleges a connection between his failure to get that job and Delta's review of his personnel file. Arguably, Delta's rejection letter should have alerted Mr. Benton to a problem with his personnel file. But additional allegations show that by April 30, 2010, Mr. Benton knew or should have known of his injury. On that date he learned that Officer Chavez had prepared a false write-up regarding the Elgin traffic stop. He alleges being surprised that this write-up existed because he had been threatened with false write-ups in September 2009, yet he had never seen this false write-up. R., Vol. 1 at 59-60. Based on these allegations, we conclude that Mr. Benton's retaliation claims accrued no later than April 30, 2010. Therefore, he was required to file his EEOC charge within the next 300 days, by no later than February 24, 2011. Of course, if the false information was provided to

- 18 -

another potential employer at a future date, this would "constitut[e] a separate actionable unlawful employment practice," *see Morgan*, 536 U.S. at 114, and the period for filing a claim would begin to run anew from the time the employee knew or should have known of it.

### b. Application of Equitable Tolling and Estoppel to Mr. Benton's Retaliation Claims

Because the district court did not address Mr. Benton's Title VII and ADEA retaliation claims, it did not consider whether they were timely or whether to exercise its discretion to apply equitable tolling or estoppel to extend his deadline for filing his EEOC charge. As an appellate court, we are limited in our "authority to fashion [our] own rationale for a decision entrusted in the first instance to the discretion of the district court." *Ashby v. McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003). Thus, we would ordinarily remand to allow the district court to make a determination on equitable tolling and estoppel in the first instance. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1174-75 (10th Cir. 1998). But we need not do so here because we can say, as a matter of law, that the district court would have abused its discretion by applying either equitable doctrine in this case. *See Ashby*, 331 F.3d at 1151.

Mr. Benton argues that equitable tolling and estoppel apply because he had no knowledge of the false write-ups until he reviewed his South Fork personnel file.[4]

---

[4] Mr. Benton now disclaims the assertion he made in his objections to the R&R (through his former counsel) that defendants delayed the filing of his EEOC charge by withholding his personnel file and releasing it only in scattered versions. He

(continued)

- 19 -

He also maintains that in September 2009 defendants falsely led him to believe that his personnel file would not contain any false write-ups if he agreed to resign from his position with the Town. But for this promise, he claims that he would have filed his discrimination charge sooner than July 18, 2011.

Mr. Benton's allegations do not establish grounds for tolling the 300-day time period for filing his EEOC charge. After he learned of the false write-up prepared by Officer Chavez on April 30, 2010, he waited eight months to obtain a copy of his personnel file. He then delayed an additional six months to file his EEOC charge. He does not allege any acts by defendants during this time period that caused his delay, that lulled him into inaction, or that misled him about his claims. He says only that he did not realize how legally important the false write-ups were. R., Vol. 1 at 63. Mr. Benton's allegations fail to demonstrate grounds for applying equitable tolling or equitable estoppel to extend the 300-day deadline for filing his EEOC charge on his retaliation claims.

### 5. District Court's Denial of an Evidentiary Hearing on Equitable Tolling and Estoppel Issues

We also reject Mr. Benton's contention that the district was required to conduct an evidentiary hearing to determine whether equitable tolling or estoppel apply in this case. In his objections to the R&R, Mr. Benton cited *Beaird*, 145 F.3d at 1174-75, for this proposition. We decline to read *Beaird* as requiring a district

---

acknowledges that, upon his initial request, he obtained a complete copy of that file on January 14, 2011.

court to hold an evidentiary hearing in every case where equitable tolling or estoppel is asserted.  In this case those issues arose in the context of motions to dismiss under Rule 12(b)(6).  Accordingly, the district court made its determination based solely on the allegations in Mr. Benton's amended complaint, as do we.  He does not explain how an evidentiary hearing could alter the conclusion that he failed to allege any grounds for applying equitable tolling or estoppel.  He simply has not "alleged enough facts to warrant . . . an evidentiary hearing to determine whether he is entitled to [that relief]."  *Fleming v. Evans*, 481 F.3d 1249, 1256-57 (10th Cir. 2007).

## IV.    Conclusion

The judgment of the district court is affirmed.  Mr. Benton's pending motions are denied.

Entered for the Court

Wade Brorby
Senior Circuit Judge

- 21 -